553 P.2d 1306

**Ronald K. FARMER and Catherine Farmer, husband and wife, Plaintiffs-Respondents,**

v.

**INTERNATIONAL HARVESTER COMPANY, a New Jersey Corporation and Boise International, Inc., an Idaho Corporation, Defendants-Appellants.**

**No. 11670.**

Supreme Court of Idaho.

Aug. 26, 1976.

. John W. Barrett and Paul S. Street of Moffatt, Thomas, Barrett & Blanton, Boise, for defendants-appellants.

Phillip M. Barber of Elam, Burke, Jeppesen, Evans & Boyd, Boise, for plaintiffs-respondents.

SHEPARD, Justice.

This is an appeal from a judgment entered on a jury verdict for plaintiffs in an action for personal injury and property damage resulting from a single vehicle accident. The cause is in the nature of a products liability action brought on alternative theories of negligence, strict liability and warranty against the manufacturer and the supplier of the vehicle. Appeal is also taken from orders denying defendants' motion for judgment N. O. V. and for a new trial. We affirm.

The respondent, Ronald K. Farmer, was injured in the course of driving a truck-tractor manufactured by defendant-appellant International Harvester Co. and sold to him by defendant-appellant Boise International, Inc. Suit was instituted by the Farmers seeking damages for the property damage to the truck-tractor, for personal injuries and for the wife's loss of consortium.

Farmer purchased the vehicle new and at the time of the accident two years later it had been driven approximately 116,000 miles. On March 16, 1971, while Farmer was driving the truck out of Seattle, Washington, he heard a "popping" noise similar to the sound of metal fracturing and felt a "crunching" sensation in the truck's steering gear. He immediately stopped and inspected the truck and found nothing wrong with it. Farmer continued driving and had reached a point approximately 200 miles from Seattle near Goldendale, Washington, when as he was entering a gradual right-hand curve and driving between 45 and 50 miles an hour, he again heard a "popping" noise and found his steering frozen. He applied the brakes but slid off the highway and down a steep embankment, striking his head on the interior of the truck cab and sustaining an injury. That injury produced brain damage with "residual left spastic hemiparesis."

Following the accident, it was found that the gear box mechanism controlling the steering of the truck was damaged and the Farmers alleged that those components of

the steering system were defective, had failed before the accident and caused the accident to happen. The Farmers also alleged that the driver's air suspension seat was defective, catapulted him about the cab interior and contributed to the injuries.

At trial before the jury there was extensive demonstrative and expert evidence introduced by each party in support of its contentions. A special verdict was returned by the jury in favor of plaintiffs-respondents on their complaint and judgment was entered thereon.

■ Appellants assign as error the admission of certain evidence over objection. One element of plaintiffs' case in proof of damage was medical expense. Plaintiff offered two sets of medical bills, the first covering the expenses from the date of the accident, March 16, 1971 to October 1972. The second set of medical bills covered expenses from October 1972 to the date of trial 1974. That second set of bills was for expenses incurred by respondent after a fall he sustained in October 1972 which required back and Achilles tendon surgery. Defendants-appellants objected to the admission of that second set of medical bills on the basis that they were irrelevant to the action, required explanation by a physician as to their relationship to the truck accident and were hearsay on the issue as to whether they were incurred as the result of the 1971 injury. On appeal, however, appellants argue that the medical bills should not have been admitted because there was no proper foundation on the reasonableness and necessity of the medical bills. Such objection was not raised at trial and cannot now be raised for the first time on appeal. *McLean v. City of Spirit Lake,* 91 Idaho 779, 784, 430 P.2d 670, 675 (1967); *Crosby v. Putnam,* 89 Idaho 45, 48, 402 P.2d 389, 391 (1965). Ordinarily, testimony by the patient or by the physician or the health care provider on the amounts charged or paid for medical services is sufficient evidence of the reasonable value of the services in the absence of

some showing to the contrary. *Spurr v. LaSalle Construction Co.,* 385 F.2d 322, 329 (7th Cir. 1967); *Malinson v. Black,* 83 Cal.App.2d 375, 188 P.2d 788 (1948); Cf. *Brooks v. Duncan,* 96 Idaho 579, 532 P.2d 921 (1975).

■ Appellants also argue that there is no foundation for the admission of the medical bills because no showing is made that the services rendered after the fall in October 1972 were necessary because of or as a proximate result of the 1971 truck accident. The record reveals direct testimony that the injuries and resulting medical expense incurred after the accident of October 1972 were proximately caused by the injuries received in 1971. Thus we find no error.

■ Appellant next argues that the trial court erred in permitting Farmer to testify on impairment of his earning capacity without the necessity of written business records. The mere existence of written records does not render otherwise adequate, definite, specific and competent testimony *ipso facto* speculative or uncertain. *McLean v. City of Spirit Lake, supra; Driesbach v. Lynch,* 74 Idaho 225, 259 P.2d 1039 (1953); *Kelso v. Edward Rutledge Timber Co.,* 46 Idaho 497, 269 P. 94 (1928). Appellants' reliance on the best evidence rule is misplaced. Plaintiffs-respondents were not attempting to prove the contents of any writing and the fact of recordation is incidental or collateral in circumstances such as in the case at bar.

■ Appellant also asserts error of the trial court in its instructions to the jury on the theory of express warranty. That theory was not set forth in the amended complaint and there was no evidence from which it could be concluded that the seller had created an express warranty. The jury specifically found that the appellants were not liable on an express warranty. Therefore despite the arguably erroneous instruction, the record does not demonstrate that appellants were prejudiced thereby.

**746**

■ Appellants next assert the trial court erred in instructing the jury to decide whether the disclaimer of implied and express warranties contained in the conditional sales contract was conspicuous. In such circumstances the decision of whether a term or clause is "conspicuous" is for the court. I.C. § 28–1–201(10); *Marion Power Shovel Co. v. Huntsman*, 246 Ark. 152, 437 S.W.2d 784 (1969); *George C. Christopher & Son, Inc. v. Kansas Paint & Color Co., Inc.*, 215 Kan. 185, 523 P.2d 709, as modified 215 Kan. 510, 525 P.2d 626 (1974). However, the conditional sales contract in question is before this Court and we determine that the disclaimer of implied and express warranties was not conspicuous. *See Childers & Venters, Inc. v. Sowards*, 460 S.W.2d 343 (Ky.1970); *George C. Christopher & Son, Inc. v. Kansas Paint & Color Co., Inc., supra.* In view of our determination and holding on the question no prejudice resulted by the submission of that question to the jury.

■ Appellants next assert error in the instruction to the jury on the theory of implied warranty of fitness for a particular purpose. We agree that in the case at bar such instruction was erroneous. One of the elements necessary of proof to sustain an implied warranty of fitness for a particular purpose is the reliance by the plaintiff as buyer upon the skill or judgment of the seller to select suitable goods. *Garner v. S & S Livestock Dealers, Inc.*, 248 So.2d 783 (Miss.1971); *Robinson v. Williamsen Idaho Equip. Co.*, 94 Idaho 819, 498 P.2d 1292 (1972). There is no evidence in the record to sustain proof of that particular element. Indeed here the buyer has skill and long experience in the trucking business and the fact that he traded in an older model on this purchase leads reasonably to the conclusion that the buyer did not rely upon the seller to select the truck. Nevertheless, again no prejudice is shown to have resulted from said error since plaintiffs-respondents were entitled to recover on the theories of strict liability and negligence which were also submitted

to the jury. *Messmer v. Ker*, 96 Idaho 75, 524 P.2d 536 (1974); *Shields v. Morton Chemical Co.*, 95 Idaho 674, 518 P.2d 857 (1974); *Werth v. Tromberg*, 90 Idaho 204, 409 P.2d 421 (1965); *Evans v. Davidson*, 58 Idaho 600, 77 P.2d 661 (1938).

Appellants further allege errors which may be classified in general as asserted insufficiency of the evidence to justify denial of the motions for involuntary dismissal, directed verdict, judgment N. O. V. and motions for new trial (directed at allegations founded on the theories of strict liability and negligence). In reviewing the evidence, the standards by which the Court is guided are clear and well settled. On motions for involuntary dismissal, directed verdict and judgment N. O. V., the moving party admits the truth of the adverse evidence and every inference that may be legitimately drawn therefrom. *Barlow v. International Harvester Co.*, 95 Idaho 881, 522 P.2d 1102 (1974); *Mann v. Safeway Stores, Inc.*, 95 Idaho 732, 518 P.2d 1194 (1974); *Henderson v. Cominco American, Inc.*, 95 Idaho 690, 518 P.2d 873 (1973). Said authorities are also in agreement that none of those motions should be granted if there is substantial, competent evidence to justify submitting the case to the jury or to support the verdict once it has been returned. Also, it is clear that the granting or denial of a motion for a new trial is committed to the discretion of the trial court and its decision in granting or denying the motion for a new trial will not be disturbed on appeal in the absence of a manifest abuse of discretion. *Klundt v. Carothers*, 96 Idaho 782, 537 P.2d 62 (1975); *Annau v. Schutte*, 96 Idaho 704, 535 P.2d 1095 (1975).

In *Henderson v. Cominco American, Inc., supra*, the Court stated that whether a cause of action is based on warranty, negligence or strict products liability, plaintiff has the burden of alleging and proving that 1) he was injured by the product; 2) the injury was the result of a defective or unsafe product; and 3) the defect existed when the product left the control of the

manufacturer. Nevertheless, since our adoption of the doctrine of strict liability, Restatement (Second) of Torts, § 402A (1965) and *Shields v. Morton Chemical Co., supra,* we have not been called upon to interpret the meaning of the concepts of "defect" and "unreasonable danger" or to consider the quantum and nature of proof required to establish a products liability case. See *Rindlisbaker v. Wilson,* 95 Idaho 752, 519 P.2d 421 (1974), in which we held the doctrine of strict liability applicable to defects in design but did not have the occasion to reach the issues stated above. In the instant case, however, appellants challenge the sufficiency of the evidence to establish the case required of a plaintiff.

It has been stated that the term "defect" is not susceptible of a general definition but must be considered on a case by case basis. *Culpepper v. Volkswagen of America, Inc.,* 109 Cal.Rptr. 110 (Cal.App.1973); *Bradford v. Bendix-Westinghouse Automotive Air Brake Co.,* 33 Colo.App. 99, 517 P.2d 406 (1973); *Bollmeier v. Ford Motor Co.,* 130 Ill.App.2d 844, 265 N.E.2d 212 (1970); *Bombardi v. Pochel's Appliance & TV Co.,* 10 Wash.App. 243, 518 P.2d 202 (1973); *Jagmin v. Simonds Abrasive Co.,* 61 Wis.2d 60, 211 N.W.2d 810 (1973).

Restatement (Second) of Torts, § 402A (Comment g 1965), provides in pertinent part "Defective condition. The rule stated in this Section applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him." Comment i to § 402A defines "Unreasonably dangerous * * * the article must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Prosser, Torts § 99 (4th ed. 1971) at p. 659 states "the prevailing interpretation of 'defective' is that the product does not meet the reasonable expec-

tations of the ordinary consumer as to its safety." *See also, Culpepper v. Volkswagen of America, supra; Bradford v. Bendix-Westinghouse Automotive Air Brake Co., supra; Dunham v. Vaughan & Bushnell Mfg. Co.,* 42 Ill.2d 339, 247 N.E.2d 401 (1969); *Scanlon v. General Motors Corp.,* 65 N.J. 582, 326 A.2d 673 (1974).

Appellants' arguments explicitly suggest that the evidence here is insufficient to establish specific defects in the truck. While direct evidence of identifiable defect is the strongest evidence of a product's defective condition, *Bombardi v. Pochel's Appliance & TV Co., supra,* such evidence of a defect in a product which was present when it left the manufacturer's control will be rare and unusual. Ordinarily, a plaintiff will have to rely upon circumstantial evidence and the inferences arising therefrom based on expert opinion testimony on the condition of the product after the accident. *See, Ford Motor Co. v. Conrardy,* 29 Colo.App. 577, 488 P.2d 219 (1971). The better reasoned cases do not require and we hold that a plaintiff need not prove a specific defect to carry his burden of proof.

A *prima facie* case may be proved by direct or circumstantial evidence of a malfunction of the product and the absence of evidence of abnormal use and the absence of evidence of reasonable secondary causes which would eliminate liability of the defendant. *Summers v. Interstate Tractor & Equipment Co.,* 466 F.2d 42 (9th Cir. 1972) (applying Oregon law); *Elmore v. American Motors Corp.,* 70 Cal. 2d 578, 75 Cal.Rptr. 652, 451 P.2d 84, 33 A.L.R.3d 406 (1969); *Vandermark v. Ford Motor Co.,* 61 Cal.2d 256, 37 Cal.Rptr. 896, 391 P.2d 168 (1964); *Stewart v. Budget Rent-A-Car Corp.,* 52 Haw. 71, 470 P.2d 240 (1970); *Belleville Nat. Savings Bk. v. General Motors Corp.,* 20 Ill.App.3d 707, 313 N.E.2d 631 (1974); *St. Paul Fire & Marine Ins Co. v. Michelin Tire Corp.,* 12 Ill.App.3d 165, 298 N.E.2d 289 (1973); *Bollmeier v. Ford Motor Co., supra; Brandenburger v. Toyota Motor Sales, U.*

*S.A., Inc.,* 162 Mont. 506, 513 P.2d 268 (1973); *Moraca v. Ford Motor Co.,* 66 N.J. 454, 332 A.2d 599 (1975); *Scanlon v. General Motors Corp., supra,* 326 A.2d at 677–78; *Sabloff v. Yamaha Motor Co., Ltd.,* 113 N.J.Super. 279, 273 A.2d 606, aff'd 59 N.J. 365, 283 A.2d 321 (1971); *Jakubowski v. Minnesota Mining & Manufacturing,* 42 N.J. 177, 199 A.2d 826, (1964); *Henningsen v. Bloomfield Motors, Inc.,* 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1 (1960); *Brownell v. White Motor Corp.,* 260 Or. 251, 490 P.2d 184, 51 A.L.R.3d 1 (1971); *Vanek v. Kirby,* 253 Or. 494, 450 P.2d 778, rehearing denied 253 Or. 503, 454 P.2d 647 (1969); *Kuisis v. Baldwin-Lima-Hamilton Corp.,* 457 Pa. 321, 319 A.2d 914 (1974); *Bombardi v. Pochel's Appliance & T V Co., supra,* 518 P.2d at 203–04; Annot., "Products Liability: Proof, Under Strict Tort Liability Doctrine, That Defect was Present When Product Left Hands of Defendant," 54 A.L.R.3d 1079, § 3, at 1095–96 (1974); Annot., "Products Liability: Proof of Defect Under Doctrine of Strict Liability in Tort," 51 A.L.R.3d 8, § 2 (1973); Prosser, Torts § 103, at 673–74 (4th ed. 1971).

The rule which we adopt today relating to the burden of proof and requirements of a *prima facie* case is consistent with the doctrine of strict products liability in tort. *See, Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049 (1963); Prosser, "The Assault Upon the Citadel (Strict Liability to the Consumer)," 69 Yale L.J. 1099 (1960); Prosser "The Fall of the Citadel (Strict Liability to the Consumer)," 50 Minn.L.Rev. 791 (1966); Traynor, "The Ways and Means of Defective Products and Strict Liability," 32 Tenn.L.Rev. 363 (1965); *Reader v. General Motors Corp.,* 107 Ariz. 149, 483 P.2d 1388, 54 A.L.R.3d 1068 (1971); *Darryl v. Ford Motor Co.,* 440 S.W.2d 630 (Tex.1969); Rheingold, "Proof of Defect in Product Liability Cases," 38 Tenn.L.Rev. 325 (1971); Comment "Products Liability and the Problem of Proof," 21 Stan.L.Rev. 1777 (1969).

A distinction need not be drawn between a "defect" and a "malfunction". Proof of malfunction is circumstantial evidence of a defect in a product since a product will not ordinarily malfunction within the reasonable contemplation of a consumer in the absence of a defect. *Sabloff v. Yamaha Motor Co., Ltd., supra; Darryl v. Ford Motor Co., supra.* Testimony of the user or operator of the product as to the circumstances of the event is sufficient to establish malfunction. *Greco v. Bucciconi Engineering Co.,* 283 F.Supp. 978 (W.D.Pa.1967), aff'd 407 F.2d 87 (3rd Cir. 1969); *Clarke v. Brockway Motor Trucks,* 372 F.Supp. 1342 (E.D.Pa.1974); *McCann v. Atlas Supply Co.,* 325 F.Supp. 701 (W.D.Pa.1971); *Stewart v. Budget-Rent-A-Car Corp., supra; Bollmeier v. Ford Motor Co., supra; Kleve v. General Motors Corp.,* 210 N.W.2d 568 (Iowa 1973); Rheingold, *supra.*

Related to proof of a malfunction is proof that the event in question is not caused by any abnormal use to which the product had been put by user or operator since such proof circumstantially and inferentially indicates that the malfunction of the product is due to the defect alone. *Greco v. Bucciconi Engineering Co., supra; Clarke v. Brockway Motor Trucks, supra; Moraca v. Ford Motor Co., supra; MacDougall v. Ford Motor Co.,* 214 Pa. Super. 384, 257 A.2d 676 (1969). Additionally related is evidence which tends to eliminate reasonable secondary causes. *Greco v. Bucciconi Engineering Co., supra; Clarke v. Brockway Motor Trucks,* supra; *Moraca v. Ford Motor Co.,* supra; *McDougall v. Ford Motor Co.,* supra; Barker, "Circumstantial Evidence in Strict Liability Cases," 38 Albany L.Rev. 11 (1973). Of additional relevance are the age of a product and the length of its use, the severity of its use, the state of its repair, its expected useful life and the fact that the source of the malfunction is an enclosed system relatively immune from tampering or alteration once the product leaves the manufacturer's control. The weight of

such evidence is normally for the trier of fact. *Arrow Transp. Co. v. Fruehauf Corp.*, 289 F.Supp. 170, 173 (D.Or.1968); *Bradford v. Bendix-Westinghouse Automotive Air-Brake Co., supra,* 517 P.2d at 414; *Kleve v. General Motors Corp., supra,* 210 N.W.2d at 572; *Hawkeye-Security Ins. Co. v. Ford Motor Co.,* 174 N.W.2d 672 (Iowa 1970), after remand, 199 N.W.2d 373 (Iowa 1972); *Scanlon v. General Motors Corp., supra,* 326 A.2d at 678; *Tucker v. Unit Crane & Shovel Corp.,* 256 Or. 318, 473 P.2d 862 (1970); *Kuisis v. Baldwin-Lima-Hamilton Corp., supra,* 319 A.2d at 921–23; *Williams v. General Motors Corp.,* 501 S.W.2d 930 (Tex.Civ.App.1973).

 In summary the evidence need only be such that it can be said:

"The product itself must be of a type permitting the jury, after weighing all the evidence * * * to infer that in the normal course of human experience an injury would not have occurred at this point in the product's life span had there not been a defect attributable to the manufacturer." *Scanlon v. General Motors Corp., supra,* 326 A.2d at 679.

A plaintiff need not exclude every possible cause but only reasonably likely causes. *Dennis v. Ford Motor Co.,* 332 F.Supp. 901 (W.D.Pa.1971) affirmed 471 F.2d 733 (3rd Cir. 1973); *McCann v. Atlas Supply Co., supra; Henningsen v. Bloomfield Motors, Inc., supra; Bombardi v. Pochel's Appliance & T V Co., supra.* However, it is also clear that the plaintiff will not carry his burden of proof by merely proving the fact of the occurrence of an accident. *Gates v. Ford Motor Co.,* 494 F.2d 458 (10th Cir. 1974); *Scanlon v. General Motors Corp., supra; Kirkland v. General Motors Corp.,* 521 P.2d 1353 (Okl.1974).

 One further aspect of a plaintiff's case is the requirement that he must prove that the defect in the product rendered it "unreasonably dangerous." Restatement (Second) of Torts § 402A, Comment i (1965). Ordinarily, the evidence indicating the presence of the defect in the

product or permitting its inference under all the circumstances will also prove or permit the inference to be drawn that the defective condition of the product made it unreasonably dangerous. *Williams v. General Motors Corp., supra; Darryl v. Ford Motor Co., supra;* Annot. 54 A.L.R.3d 352 (1974). In the case at bar there appears no dispute that if the components of the respondent's truck were defective as alleged, those defects rendered the truck "unreasonably dangerous" as that term is used in the doctrine of strict liability. It must also be established that the product was in defective condition when it left the manufacturer's control, but in the absence of direct evidence, the production of which is always difficult, other evidence negating other causes of failure and making it reasonable to infer that a dangerous condition existed at the time that the defendant had control is sufficient. *Jakubowski v. Minnesota Mining & Manufacturing, supra; Scanlon v. General Motors, supra.* Those proof requirements are not significantly at variance from those required to establish by circumstantial evidence the defective condition of the product. See Rheingold, *supra,* 38 Tenn.L.Rev. 325 (1971). Again, in the case at bar there is evidently no dispute that if any alleged defects in fact existed that such was the case at the time the truck was in the defendants' control.

 We now turn to the proof of facts viewed in the light most favorable to the plaintiffs-respondents under the applicable standards of appellate review. Plaintiff-respondent had possession of and operated the truck for approximately two years. The expected life span of such a truck is between 500,000 and 700,000 miles and the 116,000 miles of operation by plaintiff-respondent represented probably less than one year's anticipated operation. During said two years, plaintiff-respondent had experienced no difficulty with the steering.

On the day of the accident, the evidence indicated that the operator was not sleepy and did not fall asleep before the accident; the weather was clear and cold and the

highway surface was dry. The truck had received regular maintenance including lubrication and oil changes and the truck was equipped with steel belted radial tires in good condition. The accident was not caused by any problem with the tires. The brakes on the truck had been relined three months before the accident and they functioned properly at the time of the accident. The operator was the sole eye witness to this single vehicle accident.

A few hours before the accident the operator experienced a physical sensation through the steering wheel and heard a popping sound which suggested the fracturing of metal surfaces. The operator was familiar with the mechanical operation of trucks, having worked on or around them since he was of high school age. At the time of the accident the operator was entering a gradual right-hand curve on the highway and suddenly found the steering apparatus was frozen or locked. As the truck left the highway, the operator was bounced upward several times by the driver's seat and struck his head several times before he lost consciousness.

Plaintiff-respondent had not taken apart the steering gear box for servicing or any other reason following his purchase of the truck. Following the accident, when the steering gear box was removed from the frame of the truck, one side of the cover of the box was deformed. The truck's steering column was in good condition following the accident and the damage to the steering was in the steering gear box. When the steering gear box was opened following the accident, the pinions or studs of the lever shaft were not in their usual position within the leads of the worm gear, were broken off at the ends and were resting on top of the worm gear.

An expert witness testified to examination of the steering mechanism and concluded that the damage to the gear box occurred prior to the final impact of the truck in the crash, and that a portion of the gear box mechanism would not have fractured unless it contained faulty material.

Stated in general, such was the state of the evidence at the close of plaintiffs-respondents' case in chief. Comparing that evidence to the standards enunciated heretofore we hold the trial court did not err in denying the defendants-appellants' motion for involuntary dismissal. The weight to be given the evidence and the resolution of alleged discrepancies therein were matters for the jury.

■ Contrasting defendants-appellants' case, there was conflict with the plaintiffs-respondents' evidence regarding braking and skid marks. There was further conflict from expert witnesses regarding the adequacy of the design and manufacture of the driver's seat and its safety. We pause to note that this case raises no issue as to whether the steering gear was defectively designed. Witnesses for defendants-appellants, however, testified that the steering gear box and the driver's seat at issue herein are purchased as complete units by International Harvester from independent suppliers. International Harvester only visually inspects such component parts and the entire unit is given only a brief driving test. Testimony from defense witnesses concluded that the gear box components were not metallurgically defective, that the damage to the gear box components could not have been sustained by any forces generated by ordinary operation of the truck and that the damage in the steering components in the truck was caused by the crash.

There was much conflict in the evidence concerning the plaintiff-respondent and his operation of the truck at the time of the accident i.e., whether the steering gear components malfunctioned and caused the accident or were damaged by the crash, and whether the driver's seat or the rough terrain caused plaintiff-respondent to be bounced up and down and strike his head. Those conflicts in the evidence were cor-

rectly submitted to the jury for resolution. We hold that the evidence for plaintiffs-respondents was of sufficient quantity and probative value that reasonable minds could find in their favor. It is undisputed that the steering malfunctioned in some way during the course of normal operation and there is an absence of evidence of reasonable secondary causes for which defendants-appellants were not responsible. Therefore the trial court correctly denied the appellants' motions for a directed verdict, for a judgment N.O.V. and for a new trial.

Insofar as the allegation that appellants were negligent in their duty of inspection and testing and the instruction based thereon, we hold that such issues were properly submitted to the jury by correct instructions. *Boeing Airplane Co. v. Brown*, 291 F.2d 310 (9th Cir. 1961); *International Harvester Co. v. Sharoff*, 202 F.2d 52 (10th Cir. 1953); *Comstock v. General Motors Corp.*, 358 Mich. 163, 99 N.W. 2d 627, 78 A.L.R.2d 449 (1959); Restatement (Second) of Torts § 395, Comments e and f (1965).

We further hold that the evidence was sufficient to permit the jury to determine whether respondent's injuries were proximately caused or rendered more serious by reason of the design and construction of the driver's seat. The jury was properly instructed on that issue. The intended use of the truck includes within its scope the reasonably foreseeable likelihood that in the normal course of operation a truck may be involved in a collision or other accidents; it is thus the manufacturer's duty to design and manufacture its products so as to eliminate unreasonable risks of foreseeable injury in the event of collision or other impact. *Larsen v. General Motors Corp.*, 391 F.2d 495 (8th Cir. 1968); *Dyson v. General Motors Corp.*, 298 F.Supp. 1064 (E.D.Pa.1969); *Baumgardner v. American Motors Corp.*, 83 Wash.2d 751, 522 P.2d 829 (1974); Annot., "Liability of Manufacturer, Seller or Distributor of Motor Vehicle for Defect Which Merely Enhances Injury from Accident Otherwise Caused," 42 A.L.R.3d 560 (1972).

Affirmed. Costs to respondents.

McFADDEN, C. J., DONALDSON, J., and SCOGGIN, District Judge, retired, concur.

BAKES, J., dissents without opinion.