646 P.2d 1020

Edgar A. FOUCHE, Plaintiff-Appellant, and Cross-Respondent,

v.

CHRYSLER MOTORS CORPORATION, Wilson Motors, Inc., ABC Corporation, DEF Corporation, GHI Corporation, JKL Corporation, and Dodge Motor Corporation, Defendants-Respondents, and Cross-Appellants.

No. 13284.

Court of Appeals of Idaho.

June 15, 1982.

Petition for Review Granted Oct. 18, 1982.

Michael McLaughlin and Robert F. McLaughlin (McLaughlin Law Offices, Chartered), of Mountain Home, for appellant, cross-respondent.

John W. Barrett and Michael G. McPeek (Moffatt, Thomas, Barrett & Blanton, Chartered) of Boise, for respondent, cross-appellant Chrysler Motors Corp.

Richard C. Mellon, Jr. (Elam, Burke, Evans, Boyd & Koontz) of Boise, for respondent, cross-appellant Wilson Motors, Inc.

BURNETT, Judge.

Edgar Fouche was injured in a collision while driving a 1972 Dodge Colt automobile manufactured in Japan for Chrysler Motors Corporation, and sold by Wilson Motors, Inc. Fouche sued Chrysler and Wilson Motors for damages, alleging that defects in the driver's seat belt and energy-absorbing steering column had increased or "enhanced" his injuries. Following presentation of Fouche's case-in-chief to a jury, the district judge granted motions for directed verdict in favor of Chrysler and Wilson Motors. The court later denied Fouche's motion for a new trial, and motions by Chrysler and Wilson Motors for award of attorney fees. Fouche has appealed the dismissal; Chrysler and Wilson Motors have cross-appealed the denial of attorney fees. We reverse the judgment and remand the cause to the district court.

Fouche's appeal raises three principal issues. First, what must an injured plaintiff prove to establish a prima facie case in a "second collision" product liability suit? Second, was a prima facie case established in the instant action? Third, was certain opinion testimony properly excluded in this case? Our disposition of the main appeal makes it unnecessary to address the attorney fee question raised by the cross-appeal.

I

Our inquiry into the plaintiff's burden of proof begins with *Shields v. Morton Chemical Co.*, 95 Idaho 674, 518 P.2d 857 (1973). In that case the Idaho Supreme Court adopted the Restatement (Second) of Torts § 402A (1965), imposing strict liability for "any product in a defective condition unrea-

sonably dangerous to the user or consumer ...." 95 Idaho at 676, 518 P.2d at 859.

In *Farmer v. International Harvester Co.,* 97 Idaho 742, 553 P.2d 1306 (1976), the court outlined the general elements of proof in a strict liability action. The court held that a plaintiff need not prove a specific product defect. A prima facie case for defectiveness may be proved through direct or circumstantial evidence showing (a) that the product malfunctioned; (b) that it was not abnormally used; and (c) that there were no other reasonably likely causes of the plaintiff's injury which would eliminate the defendant's liability. The "unreasonably dangerous" condition of the product may be inferred from the same direct or circumstantial evidence used to establish defectiveness. 97 Idaho at 747–49, 553 P.2d at 1311–13.

The facts in *Farmer* took the Supreme Court to the threshold of a new dimension in product liability—the "second collision" or "crashworthiness" case. In *Farmer* a truck driver claimed injury resulting from a defective steering mechanism that caused him to lose control of his vehicle, and from a defectively designed air suspension seat that catapulted him about the cab interior when the truck ran off the road. Although the defective steering mechanism caused the accident, the defective seat contributed to the "second collision" in the cab that caused the driver's injury.

Our Supreme Court, adopting a line of authority emanating from *Larsen v. General Motors Corp.,* 391 F.2d 495 (8th Cir. 1968), held:

> The intended use of the truck includes within its scope the reasonably foreseeable likelihood that in the normal course of operation a truck may be involved in a collision or other accidents; it is thus the manufacturer's duty to design and manufacture its products so as to eliminate unreasonable risks of foreseeable injury in the event of collision or other impact. [97 Idaho at 751, 553 P.2d at 1315.]

The Supreme Court did not explicitly decide whether a defect relating to "crashworthiness" may establish a basis for strict liability in tort. Moreover, because both product defects in *Farmer* were attributable to the same truck manufacturer, the Supreme Court had no occasion to decide whether to apportion the harm caused by the defects. These questions go to the heart of the plaintiff's burden of proof in a "second collision" suit. They confront us on the facts of the instant case.

At approximately 3:00 a. m., on the interstate highway between Boise and Mountain Home, Edgar Fouche drove his automobile at approximately 55 miles per hour into the rear of a stationary, unattended vehicle. He suffered a ruptured aorta—the main trunk artery descending from the chest into the abdomen—as well as trauma to his face and mouth. The aorta was surgically repaired, but evidence at trial indicated that there could be long-term secondary effects of the injury.

Fouche testified that the collision with the other vehicle caused him to strike the steering wheel and windshield of his car. He said that he was wearing a lap seat belt, but not a shoulder harness, when the accident occurred. He further testified that after the impact, he "slumped over" to the passenger's side of the vehicle. As he attempted to exit from the passenger's side, he found himself still wrapped in his seat belt, which had unreeled. The steering column, introduced as an exhibit at trial, was visibly bent. An auto mechanic testified that the type of steering column installed in Dodge Colt automobiles was capable of collapsing up to five inches, but that the column in Fouche's car had collapsed only one and one-quarter inches. The mechanic also testified about possible causes of seat belt failure. When he offered an opinion about what happened physically to Fouche during the accident, his testimony was excluded for reasons discussed more fully below.

Fouche claimed that his injuries were enhanced by malfunctions of the seat belt and of the collapsible steering column. He initially grounded his claim upon theories of negligence, warranty, and strict liability in tort. However, he dismissed the negligence count of his complaint before trial. At the

close of Fouche's case-in-chief, the trial court ruled that Fouche had presented sufficient evidence of equipment malfunction to submit the issue of product defects to the jury. However, the court observed that Fouche had not proven what his injuries would have been if the seat belt and steering column had functioned properly. Therefore, the court held, Fouche had failed to make a prima facie case for enhancement of injuries. The action was dismissed.

■ The trial court's ruling, as to adequacy of the evidence on defects, was based upon standards enunciated in *Farmer.* The trial court implicitly ruled that strict liability may attach to product defects in "second collision" cases. We agree and we so hold. *E.g., Polk v. Ford Motor Co.*, 529 F.2d 259 (8th Cir.), *cert. denied*, 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 (1976); *Turcotte v. Ford Motor Co.*, 494 F.2d 173 (1st Cir. 1974); *Dyson v. General Motors Corp.*, 298 F.Supp. 1064 (E.D.Pa.1969). The plaintiff's proof of such defects must follow the *Farmer* guidelines.

However, this case crosses the "crashworthiness" threshold that *Farmer* merely approached. No product defect has been blamed for the "first collision"—the impact with the stationary vehicle. Fouche has sought recovery only for injuries from which he was inadequately protected by the defective seat belt and steering column. His claim has raised a question of apportionment, with attendant implications for the plaintiff's burden of proof in this type of action.

In the seminal case of *Larsen v. General Motors Corp., supra*, the Eighth Circuit Court said that a plaintiff making a "crashworthiness" claim should recover:

> that portion of the damage or injury caused by the defective design over and above the damage or injury that probably would have occurred as a result of the impact or collision absent the defective design. [391 F.2d at 503.]

The Restatement (Second) of Torts, at § 433A, notes that harm should be apportioned among two or more causes only where there are distinct harms or there is a reasonable basis for determining the contribution of each cause to a single harm. In *Higginbotham v. Ford Motor Co.*, 540 F.2d 762 (5th Cir. 1976), the Fifth Circuit grafted *Larsen* to the Restatement, holding that in "crashworthy" cases the manufacturer has proximately caused only an enhancement of injuries, not the accident itself; consequently, "a rational basis for apportionment exists." 540 F.2d at 774.

Section 433B(1) of the Restatement imposes on a plaintiff the burden of proving that an actor's tortious conduct caused the plaintiff's harm. But where the tortious conduct of two or more actors has combined to produce the harm, section 433B(2) shifts the burden of proof on apportionment to each such actor. The courts are divided as to whether the general rules set forth in section 433B should be followed in "second collision" cases.

The leading opponent of section 433B has been the federal Court of Appeals for the Third Circuit. In *Huddell v. Levin*, 537 F.2d 726 (3rd Cir. 1976), a majority of the court, predicting New Jersey law in a "second collision" case that gave the judges "much disquietude over the evidence," held that the plaintiff bore the burden of proof on apportionment. 537 F.2d at 736, 737. The court dismissed the Restatement approach as applicable only in single impact cases, where concurrent tortfeasors "have combined *contemporaneously* to cause the injuries." *Id.* at 738 (emphasis original). The court articulated a three-tier burden of proof for plaintiffs: (a) to show an alternative, safer design, practicable under the circumstances; (b) to show the injuries, if any, that would have resulted had the alternative been used; and (c) to show the extent of enhanced injuries attributable to the defective design. *Id.* at 737–38; *see also Seese v. Volkswagenwerk A. G.*, 648 F.2d 833, 843 (3rd Cir.), *cert. denied*, 454 U.S. 867, 102 S.Ct. 330, 70 L.Ed.2d 168 (1981).

The *Huddell* analysis has been adopted by several courts outside the Third Circuit. *E.g., Caiazzo v. Volkswagenwerk A. G.*, 647 F.2d 241 (2d Cir. 1981) (predicting New York law); *Stonehocker v. General Motors*

*Corp.,* 587 F.2d 151 (4th Cir. 1978) (predicting South Carolina Law); *Endicott v. Nissan Motors Corp.,* 73 Cal.App.3d 917, 141 Cal.Rptr. 95 (1977); *Wernimont v. International Harvester Corp.,* 309 N.W.2d 137 (Iowa Ct.App.1981). It has attracted some supportive commentary. *See* Foland, *Enhanced Injury: Problems of Proof in "Second Collision" and "Crashworthy" Cases,* 16 Washburn L.J. 600 (1977). *Huddell* has been urged by Chrysler and Wilson Motors in the instant case, at trial and on appeal. The trial court's holding on burden of proof was consistent with *Huddell.*

However, *Huddell* has been criticized as a distortion of traditional tort law principles and an undue narrowing of the *Larsen* decision. *E.g.,* Note, *Apportionment of Damages in the "Second Collision" Case,* 63 Va. L.Rev. 475 (1977). In *Larsen* the manufacturer had opposed the "crashworthiness" doctrine in part because the apportionment of harm would be difficult to assess. The *Larsen* court said:

> This is no persuasive answer and, even if difficult, there is no reason to abandon the injured party to his dismal fate as a traffic statistic, when the manufacturer owed, at least, a common law duty of reasonable care in the design and construction of its product. The obstacles of apportionment are not insurmountable. [391 F.2d at 503.]

In *Fox v. Ford Motor Co.,* 575 F.2d 774 (10th Cir. 1978) the Tenth Circuit, predicting Wyoming law, explicitly rejected *Huddell* and relied upon the principles set forth in the Restatement. The court noted:

> We fail to see any difference between ... [the "second collision"] type of case and the other case in which two parties, one passive, the other active, cooperate in the production of an injury. Each one's contribution in a causal sense must be established. Damages may be apportioned between the two causes if there are distinct harms or a reasonable basis for determining the causes of injury. Restatement of Torts, Second § 433A. [575 F.2d at 787.]

Because *Fox* involved a wrongful death, which the court deemed to be indivisible under Restatement section 433A, a judgment for the unapportioned damage was upheld. In *Chrysler Corp. v. Todorovich,* 580 P.2d 1123 (Wyo.1978), the Wyoming Supreme Court adopted the same reasoning, in a case where a non-fatal injury was deemed to be indivisible.

In *Lahocki v. Contee Sand & Gravel Co.,* 41 Md.App. 579, 398 A.2d 490 (1979), *rev'd on other grounds,* 410 A.2d 1039 (Md.1980), the court held that the plaintiff must present "some evidence" that the alleged product defects caused the enhanced injuries. However, the court rejected *Huddell* in favor of the Restatement, and held that the burden of proof as to apportionment should rest on the defendants. 398 A.2d at 501.

Most recently, in *Mitchell v. Volkswagenwerk A.G.,* 669 F.2d 1199 (8th Cir. 1982), the Eighth Circuit, source of the *Larsen* decision, emphatically rejected *Huddell.* The court criticized the *Huddell* tests as confusing the rules of legal causation. Applying Minnesota law and the Restatement, the court held that a plaintiff must show the alleged defect to be a "substantial factor" in producing damages beyond those probably caused by the original impact or collision. *Id.* at 1206. However, the court also held that the burden of proof on apportionment of injuries rests on the defendants; and that, if an injury is indivisible, the defendants are treated as joint and several tortfeasors. *Id.* at 1206, 1208.

Having considered the conflicting lines of authority, we are persuaded that the decisions consistent with the Restatement are better reasoned. They adhere more closely to the original intent of the *Larsen* decision. In our view, they are also more compatible with the general standards of proof established by our Supreme Court in *Farmer.* We reject *Huddell.*

■ We hold that in a strict liability "crashworthiness" case, the plaintiff must present sufficient evidence for a trier of fact reasonably to find that the vehicle contained one or more defects, and that the

defects were a substantial factor in producing the plaintiff's injuries during the "second collision." If the plaintiff fails to show that the defects were a substantial factor, there can be no recovery. If the defects are shown to be a substantial factor, then the burden of proving apportionment falls on the defendants. Where no apportionment is established, the plaintiff is entitled to recover fully from any defendant whose defective product was a substantial factor in producing the injuries. However, where the injuries are apportioned, the plaintiff is entitled to recover only for injuries in excess of those which probably would have occurred absent the defects.

We further hold that whether the plaintiff's injuries are capable of apportionment is an issue of law for the trial court to decide. If the injuries can be apportioned, the actual apportionment is a question of fact for the jury. Restatement (Second) of Torts, *supra* at § 434; *Mitchell v. Volkswagenwerk A. G., supra.*

In the present case, defects were alleged to exist in the seat belt and the collapsible steering column. The specific purpose of such equipment is to prevent or to minimize injury resulting from a "second collision." Evidence showing the plaintiff's injuries to be a type which the safety equipment was designed to prevent or to minimize is relevant to prove that the defects were a substantial factor in producing the injuries. *Cf. May v. Portland Jeep, Inc.,* 265 Or. 307, 509 P.2d 24 (1973).

## II

In this action, Fouche seeks recovery only for enhanced injury. He has not sued any party alleged to be responsible for the "first collision"—the impact of his automobile with the vehicle left unattended on the highway. Chrysler and Wilson Motors argue that they should not bear the burden of proving apportionment because Fouche has not alleged the tortious conduct of two or more separate actors under section 433B of the Restatement. In essence, Chrysler and Wilson Motors would limit our holding on burden of proof to cases where a plaintiff seeks to recover, from multiple tortfeasors, all injuries sustained in an accident. The pure enhancement case would be excluded.

Although we have enunciated a policy consistent with section 433B, we do not believe it should be restricted to "crashworthiness" cases involving multiple tortfeasors. If the plaintiff shows that defects in a vehicle were a substantial factor in producing his injuries during a "second collision," the defendant's burden of proving apportionment should not depend on whether the plaintiff has also sued another party for causing the first impact. The effect of apportionment, to diminish the defendant's liability exposure, is the same regardless of whether another party has been sued. Our holding, on the burden of proving apportionment, is applicable to the pure enhancement case.

In a prior opinion issued in this appeal, we said that the district court should have the first opportunity to apply our holding on apportionment to the facts of the case. However, all parties promptly filed petitions for rehearing. Each of them urged, in part, that we decide whether a directed verdict for the defendants was appropriate, on the present record, in light of our holding. In the interest of judicial economy, we will do so.

A motion for directed verdict, made at conclusion of a plaintiff's case-in-chief, should not be granted if there is substantial evidence to justify submitting the case to a jury. The moving defendant admits the truth of all the plaintiff's evidence and every legitimate inference that can be drawn therefrom. *E.g., Barlow v. International Harvester Co.,* 95 Idaho 881, 522 P.2d 1102 (1974). On the present state of the evidence, Fouche has made a factual showing from which legitimate inferences could be drawn that the seat belt and collapsible steering column were defective, and that such defects were a substantial factor in producing Fouche's injuries.

Chrysler and Wilson Motors invite our attention to the fact that Fouche

failed to ask his medical witnesses, or any other qualified expert, specifically to state a causal connection between the alleged defects and Fouche's injuries. In view of the general standards for a prima facie case articulated in *Farmer v. International Harvester Co., supra*, we decline to mandate that a causal relationship be established only by expert opinion evidence. We hold that a prima facie case may include a legitimate inference of causation, drawn from competent evidence concerning the nature of the defects and type of injuries sustained. We conclude that the judgment of the district court, upon entry of a directed verdict, should be reversed and the cause remanded.

### III

Our decision to remand makes it necessary to review the exclusion of evidence at trial. Fouche argues that the district court erred in prohibiting the auto mechanic to attempt a reconstruction of what happened physically to Fouche during the accident. The court ruled that such testimony was beyond the mechanic's expertise; and that, in any event, Fouche's intent to elicit such "expert" testimony from the mechanic had not been timely disclosed in response to a continuing request for discovery.

I.R.C.P. 26(e)(4) authorizes the trial court to exclude testimony of witnesses not disclosed by required supplementation of a response to a request for discovery. Exclusion or admission of such evidence is discretionary with the trial court. *Cf. Smith v. Webber*, 97 Idaho 703, 551 P.2d 1339 (1976). Similarly, the determination whether a witness is qualified to state an opinion is committed to the discretion of the trial court. *E.g., Sorensen v. Pickens*, 99 Idaho 564, 585 P.2d 1275 (1978); *Bean v. Diamond Alkali Co.*, 93 Idaho 32, 454 P.2d 69 (1969). We hold that there was no abuse of discretion in excluding the mechanic's testimony purporting to reconstruct what happened physically to Fouche during the accident.

The judgment is reversed and the cause remanded. No costs or attorney fees on appeal.

WALTERS, C. J., and SWANSTROM, J., concur.