**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 08 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| TIMM ADAMS, | No. 10-35458 |
| Plaintiff, | D.C. No. 4:03-cv-00049-BLW |
| and | |
| CLINGER GROWER GROUP; FUNK GROWER GROUP; HANSEN GROWER GROUP; JENTZCH-KEARL GROWER GROUP, | MEMORANDUM* ** |
| Plaintiffs - Appellees, | |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant, | |
| and | |
| E.I. DU PONT DE NEMOURS AND COMPANY, | |
| Defendant - Appellant. | |

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

\*\* Appeal No. 10-35611 is consolidated with 10-35592 and 10-35458 but we resolve 10-35611 in a separate opinion filed simultaneously with this memorandum disposition.

| | |
|---|---|
| TIMM ADAMS, | No. 10-35592 |
| Plaintiff, | D.C. No. 4:03-cv-00049-BLW |
| and | |
| CLINGER GROWER GROUP; FUNK GROWER GROUP; HANSEN GROWER GROUP; JENTZCH-KEARL GROWER GROUP, | |
| Plaintiffs - Appellants, | |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant, | |
| and | |
| E.I. DU PONT DE NEMOURS AND COMPANY, | |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted February 8, 2011
Seattle, Washington

Before: B. FLETCHER, PAEZ, and IKUTA, Circuit Judges.


Defendant-Appellant E.I. Du Pont De Nemours and Company ("DuPont"), the manufacturer of the herbicide Oust, appeals from the district court's judgment and post-trial orders following a jury trial. We have jurisdiction pursuant to 28 U.S.C. §§ 1291, 1294(1). Because the facts of this case are well known by the parties we do not repeat them here, except as necessary.

**1.** The district court found that Plaintiffs presented evidence that at most showed DuPont's nonfeasance, which cannot, as a matter of law, support an assumed duty of care claim. It therefore granted DuPont's Rule 50(b) motion as to that claim. DuPont now asserts that it is entitled to a new trial[1] as to all issues because "stewardship principles impacted *every* aspect of the trial . . . and ultimately infected the *entirety* of the jury's verdict."[2]

---

[1] We review for abuse of discretion the denial of a Rule 59 motion for a new trial. *Jorgensen v. Cassiday*, 320 F.3d 906, 918 (9th Cir. 2003).

[2] DuPont also urges us to hold that a "corporate policy does not—and cannot—give rise to a duty in tort." The district court did not find that DuPont's corporate policy, alone, gave rise to a duty in tort. DuPont's request for this court's guidance on the matter is therefore not squarely before us, and we decline to address it.

3

DuPont has not, however, identified any case in which a new trial has been granted in circumstances comparable to those here. We find no merit in DuPont's argument, particularly in light of the fact that it made strategic use of its corporate stewardship policy—which was part of the assumed duty claim—during the trial. DuPont must bear the risk of its own litigation strategy. Because DuPont has not cited any relevant authority in support of its new trial argument, the district court did not abuse its discretion when it denied DuPont's motion for a new trial on this ground.[3]

**2.**     DuPont argues that the district court erred with respect to Plaintiffs' defective product claims.

   **A.**     Rule 50(b) Motion[4]

---

[3] DuPont also argues that the district court erred when—after granting DuPont's Rule 50(b) motion as to Plaintiffs' assumed duty of stewardship claim—it allocated the jury's stewardship damages to the other claims upon which Plaintiffs prevailed. The doctrine of invited error precludes DuPont from complaining to this court about a strategy that it crafted below but now finds undesirable. *See United States v. Reyes-Alvarado*, 963 F.2d 1184, 1187 (9th Cir. 1992). Accordingly, we see no basis for disturbing the district court's reallocation of damages as requested by DuPont.

[4] We review de novo the denial of a Rule 50(b) motion for judgment as a matter of law. *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). Reversal is warranted where, construing "the evidence in the light most favorable to the nonmoving party," "the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Id.* (internal quotation omitted).

4

DuPont argues that the district court should have granted its Rule 50(b) motion on Plaintiffs' defective product claim because manufacturers cannot be held liable for manufacturing a product that does well what it is intended to do. The Idaho supreme court has "'h[e]ld that a plaintiff need not prove a specific defect to carry his burden of proof.'" *Stanley v. Lennox Indus., Inc.*, 102 P.3d 1104, 1107 (Idaho 2004) (quoting *Farmer v. Int'l Harvester Co.*, 553 P.2d 1306, 1311 (Idaho 1976)). "'A prima facie case may be proved by direct or circumstantial evidence of a malfunction of the product and the absence of evidence of abnormal use and the absence of evidence of reasonable secondary causes which would eliminate liability of the defendant.'" *Id.* A defective condition is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer . . . ." *Farmer*, 553 P.2d at 1311 (internal quotation omitted).

Here, Plaintiffs presented ample evidence from which a jury could infer that Oust was "dangerous to an extent beyond that which would be contemplated by" the government, much less an "ordinary consumer." *Id.* For example, Plaintiffs presented evidence that Oust is susceptible to erosion and unusually long-lasting—both of which the jury could have construed as circumstantial evidence that Oust is unreasonably dangerous. Moreover, the government's use of Oust in

5

accordance with its label and with DuPont's active advice and participation, was not abnormal use. Finally, Plaintiffs presented extensive evidence ruling out possible secondary causes for their crop damage. DuPont, therefore, has not met its burden to show that the "evidence permits only one reasonable conclusion." *Go Daddy*, 581 F.3d at 961. The district court properly denied DuPont's Rule 50(b) motion as to Plaintiffs' defective product claim.

**B.**     Superseding Cause Instruction[5]

DuPont argues that the district court erred in failing to instruct the jury on the doctrine of superseding cause and that it is therefore entitled to a new trial. A superseding cause is "an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another . . . ." *Mico Mobile Sales & Leasing, Inc v. Skyline Corp.*, 546 P.2d 54, 57–58 (Idaho 1975) (internal quotation omitted). DuPont argues that the jury should have been instructed that it could find that the government's negligence was a superseding cause of Plaintiffs' damages which completely cut off DuPont's liability.

Arguably, the common law superseding cause doctrine, discussed in *Mico* in 1975, was subsumed in 1980 by § 6-1405 of the Idaho Products Liability Reform

---

[5] We review the formulation of jury instructions for abuse of discretion and de novo with respect to misstatements of law. *Dang v. Cross,* 422 F.3d 800, 804 (9th Cir. 2005).

Act ("IPLRA"). *See Corbridge v. Clark Equipment Co.*, 730 P.2d 1005 (Idaho 1986). Section 6-1405, "Conduct affecting comparative responsibility," includes a misuse defense, and DuPont did not request a misuse instruction.[6] But even if the IPLRA did not eliminate the superseding cause doctrine, *see Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837–38 (1996); *Orthman v. Idaho Power Co.*, 895 P.2d 561, 564 (Idaho 1995), any instructional error was harmless in light of the evidence that Oust was, unbeknownst to the government, unreasonably dangerous. The district court did not err in failing to give a superseding cause jury instruction.

3.      DuPont argues that the district court made numerous errors with respect to Plaintiffs' failure to warn claims.

    **A.**    FIFRA Preemption

DuPont argues that the district court should have granted its Rule 50(b) Motion as to Plaintiffs' failure to warn claim because it is preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"). FIFRA requires that pesticides not be misbranded. 7 U.S.C. § 136(q)(1)(A), (F). FIFRA explicitly does not preempt all state regulation of pesticides. 7 U.S.C. § 136v(a), (b).

---

[6] Even assuming that the district court should have construed DuPont's superseding cause request as a misuse defense request, any error was harmless. The core of both doctrines is a question of proximate causation, which the district court instructed the jury it must find in order to conclude that DuPont was liable for Plaintiffs' defective product claim.

We employ a two-part test to determine whether FIFRA preempts a particular state law claim. *See Bates v. Dow Agrosciences, LLC.*, 544 U.S. 431, 444 (2005). First, the state law "must be a requirement '*for labeling or packaging*'; rules governing the design of a product, for example, are not pre-empted." *Id.* (quoting 7 U.S.C. § 136v(b)). "Second," the state law "must impose a labeling or packaging requirement that is '*in addition to or different from* those required under this subchapter.'" *Id.* (quoting 7 U.S.C. § 136v(b)).

Here, the district court's jury instructions 30 and 33 stated the necessary elements of Plaintiffs' failure to warn claims. Neither of the failure to warn claims satisfy *Bates*' first condition for preemption: none of the elements is a "requirement '*for labeling or packaging.*'" 544 U.S. at 444 (emphasis in original). Indeed, the words "label" and "package" do not appear in Jury Instruction 30 or 33. Plaintiffs' failure to warn claims are broader than DuPont's construction of them as solely based on inadequate labeling. DuPont's preemption argument is premised on an inaccurate representation of Plaintiffs' claims and is unavailing.

**B.** Failure to Warn Jury Instructions

*1. The Instruction Properly Tracked FIFRA*

DuPont alleges that, even if FIFRA does not preempt Plaintiffs' failure to warn claims, the district court's Jury Instructions 30, 33, and 34 did not properly

8

track FIFRA requirements. To begin with, Instructions 30 and 33 were not required to track FIFRA. Instruction 34 explained that Plaintiffs allege that DuPont violated the Idaho Pesticide and Chemigation Act. Idaho Code § 22-3401 et seq. The Idaho Pesticide and Chemigation Act claim does impose a labeling requirement, so the jury instruction must be "equivalent to, and fully consistent with, FIFRA's misbranding provisions." *Bates,* 544 U.S. at 447. The instruction need not, however, be "phrased in the *identical* language as its corresponding FIFRA requirement." *Id.* at 454 (emphasis in original). Jury Instruction 34 is fully consistent with FIFRA since it sufficiently tracks FIFRA's own requirements. The district court did not err in instructing the jury on Plaintiffs' failure to warn claims.

### 2. *Actual Knowledge and Sophisticated Purchaser Defenses*

DuPont argues that the district court erred in not instructing the jury on the failure to warn defenses of actual knowledge of danger and sophisticated purchaser. In *Puckett v. Oakfabco, Inc.*, 979 P.2d 1174 (Idaho 1999), the court explained that "where the undisputed facts lead to only one reasonable conclusion the court may rule as a matter of law. . . .[t]he question becomes whether the danger involved is so obvious that it is unreasonable to impose on the manufacturer a duty to warn." *Id.* at 1182 (internal quotation omitted).

9

Here, there were endless disputed facts that did not lead to only one reasonable conclusion that, as a matter of law, Oust's danger was "so obvious" that DuPont should have no duty to warn, or that the government had actual knowledge. Under *Puckett,* if there are factual disputes as to these issues, the jury comparatively apportions fault for the non-consumer plaintiff's injuries between the defendants. This apportionment is also required by Idaho Code § 6-1405(2)(b). The district court instructed the jury on comparative allocation of fault for Plaintiffs' failure to warn claims, which is what Idaho law requires. The district court did not abuse its discretion in not providing more.

DuPont also argues that the jury should have been instructed on the learned intermediary and sophisticated purchaser doctrines. In *Sliman v. Alum. Co. of Am.*, 731 P.2d 1267, 1270–71 (Idaho 1986), the court explained that "in some circumstances a supplier positioned on the commercial chain remote from the ultimate consumer may fulfill its duty to warn by adequately warning an intermediary." The court provided two examples. First, a "doctor stands as a learned intermediary between the manufacturer and the ultimate consumer." *Id.* at 1271 (internal quotation omitted). Second, a "bulk supplier, one who sells a product to another manufacturer or distributor who in turn packages and sells the product to the public," may also invoke the defense. *Id.* The facts of this case

10

present neither example noted by the Idaho supreme court in *Sliman*, nor a situation so analogous that the district court can be said to have abused its discretion by not extending the principle. Both of the *Sliman* examples involve voluntary purchasers of a product, which the Plaintiffs were not.

And to the extent that Idaho recognizes that a manufacturer has no duty to warn a sophisticated purchaser of any inherent dangers in its product, *see Mico*, 546 P.2d at 61; *see also Bromley v. Garey*, 979 P.2d 1165, 1171 (Idaho 1999) (citing Restatement (Second) of Torts § 388 (1965)), any error was more probably than not harmless. *Head v. Glacier N.W. Inc.*, 413 F.3d 1053, 1063 (9th Cir. 2005). The jury heard substantial evidence to the effect that Oust was not just inherently dangerous as an herbicide, but abnormally so.

**C.** Evidence of Subsequent Remedial Measures [7]

The district court admitted into evidence the Environmental Protection Agency's ("EPA") Re-Registration Eligibility Determination ("RED") for Oust, which summarizes Oust's risks and describes remedial measures necessary for Oust re-registration. DuPont argues that the RED is a subsequent remedial measure that is inadmissible under Federal Rule of Evidence 407 ("Rule 407").

---

[7] We review evidentiary rulings for abuse of discretion. *Sprint/United Mgmt. Co. v. Mendelsohn,* 552 U.S. 379, 384 (2008).

11

We have held that Rule 407 "only applies to a *defendant's* voluntary actions." *Pau v. Yosemite Park and Curry Co.*, 928 F.2d 880, 888 (9th Cir. 1991) (emphasis in original). Because the EPA and the Bureau of Land Management—the responsible government agency in this case—are separate federal agencies, admitting the EPA's RED into evidence against DuPont did not run afoul of Rule 407's purpose "of encouraging potential defendants to remedy hazardous conditions without fear that their actions will be used as evidence against them." *Id*. Accordingly, the district court did not abuse its discretion under Rule 407 in admitting the RED into evidence. Nor did the district court abuse its discretion under Rule 403 in concluding that the RED's danger of unfair prejudice did not substantially outweigh its probative value.

4.___DuPont argues that the district court's damages award violates Idaho's economic loss rule.[8] In *Brian and Christie, Inc. v. Leishman Elec., Inc.*, 244 P.3d 166, 172 (Idaho 2010), the court explained that "[d]amages from harm to person or property are not *purely* economic losses." Rather than limiting the damages available in a negligence action, the economic loss rule means that the "seller has

---

[8] The district court concluded, and DuPont admits, that it has waived this argument as to Bellwether Plaintiffs. DuPont's economic loss rule argument remains relevant, however, to the future damages trial for the non-Bellwether Plaintiffs. We therefore address this argument on the merits.

no duty under the law of negligence to design, manufacture, or sell property that will confirm to the buyer's economic expectations." *Id.* This rule does not bar Plaintiffs' claims for two reasons. First, Plaintiffs did not have a contractual relationship with DuPont. *Cf. Duffin v. Idaho Crop. Imp. Ass'n*, 895 P.2d 1195, 1199–1200 (Idaho 1995). Thus, they had no "economic expectations," and the economic loss rule does not apply. Second, the damages DuPont challenges were awarded to compensate Plaintiffs for injuries that Oust caused to their property, and there is an exception to the economic loss rule: economic loss *is* recoverable in tort as a loss parasitic to an injury to person or property. *See Just's, Inc. v. Arrington Const. Co.*, 583 P.2d 997, 1004 n.1 (Idaho 1978). Accordingly, Idaho's economic loss rule does not bar Plaintiffs' damages.

5.      DuPont argues that Idaho law precludes the debt-based costs portion of Plaintiffs' damages award. The debt-based costs at issue reimburse Plaintiffs for the money they "paid on their operating loans and lines of credit due to Oust crop damage." This money represents "increases in contract interest payments, *i.e.*, additional interest payments pursuant to a contract between the bellwether plaintiffs and their banks." These contractual interest payments constitute consequential damages insofar as they are designed to compensate Plaintiffs for actual money damages.

13

The parties agree that this issue is controlled by *Spreader Specialists, Inc. v. Monroc, Inc.*, 752 P.2d 617 (Idaho Ct. App. 1987), *overruled on other grounds by Walton, Inc. v. Jensen*, 979 P.2d 118 (Idaho Ct. App. 1999). *Spreader* "h[e]ld that interest charges incurred on a loan obtained in good faith, as part of a reasonable course of action to mitigate losses, may be recovered as an item of consequential damages." *Id.* at 624. The court explained that while "[m]ost cases dealing with . . . the recoverability of interest, involve claims for interest allegedly due as compensation for the detention of money during the time between injury and compensation . . . But here . . . [the plaintiff] seeks to recover a sum *actually expended* by it as a result of [the defendant's] tortious conduct." *Id.* at 623–24 (emphasis in original). The debt-based costs here are similar to the *Spreader* costs insofar as they compensate Plaintiffs for "a sum *actually expended* by [them] as a result of [DuPont's] tortious conduct." 752 P.2d at 624. Thus, *Spreader*'s analysis reasonably extends to the present dispute and supports the award of debt-based consequential damages.[9]

No. 10-35458: **AFFIRMED.**

---

[9] Dupont argues that if this court accepts only some of its arguments regarding Bellwether Plaintiffs' claims, Idaho and federal law require a new trial because the jury did not allocate fault and damages between the defendants on a claim-by-claim basis. Because we do not agree with any of DuPont's arguments, we need not address this issue.

14

Plaintiffs' motion to dismiss their cross-appeal, No. 10-35592, is

**GRANTED.** No. 10-35592: **DISMISSED.**