952 F.2d 1304
 34 Fed. R. Evid. Serv. 1155, Prod.Liab.Rep. (CCH) P 13,043
Linda POLSTON, Plaintiff-Appellant,
v.
BOOMERSHINE PONTIAC-GMC TRUCK, INC., Defendant,
Boomershine Chevrolet, Inc., Defendant,
Boomershine Automobile Co., Defendant,
General Motors Corporation, Defendant-Appellee.
 No. 90-8843.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 6, 1992.
 
 Halstrom Law Offices, Boston, Mass., Irwin Ellerin, Ellerin & Associates, Atlanta, Ga., for plaintiff-appellant.
 King & Spalding, Atlanta, Ga., Chilton D. Varner, Sandra Elizabeth Strippoli, Atlanta, Ga., Kirkland & Ellis, Washington, D.C., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before FAY and COX, Circuit Judges, and MORGAN, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 In this diversity action, Linda Polston appeals the district court's grant of General Motors Corporation's (GMC's) motion for directed verdict.
 
 
 2
 In the early morning hours of July 19, 1986, Linda Polston's Pontiac Sunbird and Joyce Banks' Oldsmobile Delta 88 collided head-on on Piedmont Road in Atlanta, Georgia. As a result of this collision, Polston suffered serious multiple injuries. She brought suit against Banks, GMC, and three GMC dealerships.[1] With respect to GMC, Polston argued that her Sunbird was defectively designed in that it was not crashworthy. She maintained that, although the design did not cause the initial collision with Banks, she suffered enhanced injuries that would not have occurred if the car had been crashworthy. The district court found that in crashworthiness cases "the law of Georgia places the burden of proof on the plaintiff to prove that the defendant was the sole cause of the enhanced injury." Polston, therefore, was required to prove both the existence and extent of enhanced injury[2] caused by the allegedly defective design. The district court held that Polston failed to distinguish between those injuries attributable to the initial crash and those attributable to the defective design. Because it found that Polston failed to prove either the existence of enhanced injury or the extent of such injury, the court granted GMC's motion for directed verdict.
 
 
 3
 It appears that this case involves a question of Georgia law which may be dispositive but is unanswered by any controlling precedent in the decisions of the Supreme Court of Georgia. Because this issue implicates substantial public policy concerns, we defer our decision in this case pending certification of this question to the Supreme Court of Georgia pursuant to GA. CONST. art. VI, § 6, para. 4, O.C.G.A. § 15-2-9, and Rule 37 of the Supreme Court of Georgia. See Claussen v. Aetna Casualty & Sur. Co., 865 F.2d 1217 (11th Cir.1989).
 
 
 4
 We submit the following for consideration by the Supreme Court of Georgia.
 
 
 5
 CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA PURSUANT TO ARTICLE VI SECTION VI PARAGRAPH IV OF THE GEORGIA CONSTITUTION.
 
 
 6
 TO THE SUPREME COURT OF GEORGIA AND THE HONORABLE JUSTICES THEREOF.
 
 I. Style of the Case
 
 7
 The style of the case on which this certificate is made is as follows: Linda Polston, Plaintiff-Appellant, versus Boomershine Pontiac-GMC Truck, Inc., Defendant, Boomershine Chevrolet, Inc., Defendant, Boomershine Automobile Co., Defendant, General Motors Corporation, Defendant-Appellee (D.C. Dkt. No. 1:88-CV-1509A-RHH). This case is assigned number 90-8843 in the United States Court of Appeals for the Eleventh Circuit, on appeal from the United States District Court for the Northern District of Georgia.
 
 II. Statement of the Facts
 
 8
 On the night of July 18, 1986, at approximately eleven o'clock in the evening, Linda Polston drove her Sunbird to the Limelight Disco in Atlanta, where she remained for several hours. Around two thirty in the morning, Polston left the Limelight on her way back home. She headed north on Piedmont Road. As Polston approached the intersection of Piedmont and Mathison Road, Joyce Banks, heading south on Piedmont Road in her Delta 88, crossed the center line; the Delta 88 crashed head-on into Polston's Sunbird. Polston was severely injured, suffering over 30 separate fractures in her head, arms, chest, hands, wrist, legs, and ankles.
 
 
 9
 At trial, Polston argued that her Sunbird lacked crashworthiness in two respects: (1) the seat belt was defective because of the "window shade" feature which allowed Polston, either accidently or deliberately, to introduce slack in the belt so that in the collision the belt was ineffective in restraining her; (2) the Sunbird had insufficient crush space in the front end such that in this head-on collision the front end of the car was allowed to cave in on Polston. Polston also claimed that GMC was negligent in failing to warn her of these defects.
 
 
 10
 After three days of trial Polston rested her case and GMC moved for a directed verdict on three grounds: (1) Georgia law required Polston to prove both the existence and extent of any enhanced injuries suffered as a result of the defective design, and Polston had done neither; (2) Polston's evidence of "enhanced injuries" was too speculative to be presented to the jury; (3) Polston had presented no evidence supporting her failure to warn claim. The district court found that under Georgia law the plaintiff in a crashworthiness case has the burden of proving that the defendant was the sole cause of any enhanced injuries by proving both the existence and extent of such injury. The court found that Polston had failed to prove either the existence or extent of enhanced injuries specifically attributable to GMC's conduct. Further, the court found that Polston had introduced no evidence supporting her failure to warn claim. The court granted GMC's motion for directed verdict, and Polston appeals.[3]
 
 III. Preliminary Issues
 
 11
 Before discussing the issue that will be certified to the Supreme Court of Georgia, we must first address several preliminary issues. First, we must determine whether Higginbotham v. Ford Motor Co., 540 F.2d 762 (5th Cir.1976)[4], is dispositive in this case. Second, we must decide whether the district court erred in granting GMC's motion for directed verdict with respect to Polston's proof on the existence of enhanced injuries. Finally, we must determine whether the district court erred in limiting the scope of Polston's expert's testimony.
 
 A.
 
 12
 GMC asserts that in Higginbotham, the Fifth Circuit determined that Georgia law places the burden on the plaintiff to apportion damages in cases of this kind. We disagree. The court found that under Georgia law, damages were not apportionable and the defendants were joint tortfeasors when their separate acts combined to produce a single indivisible injury with no rational basis for apportionment. Id. at 773. However, the court determined that because the manufacturer in a crashworthiness case was liable only for the injuries over and above those that would have occurred in a crashworthy car, a rational basis for apportionment existed and the striking driver and manufacturer were not joint tortfeasors. Id. at 774. Although we agree with GMC that the Higginbotham court found Georgia law to require the plaintiff to prove the existence of enhanced injuries, that the manufacturer and striking drivers are not joint tortfeasors, and that the manufacturer is only liable for the enhanced injuries, we do not agree that Higginbotham interpreted Georgia law to place the burden of apportionment on the plaintiff. Although Higginbotham supports this argument the court did not go so far as to say who had the burden of apportionment under Georgia law. Therefore, Higginbotham is not dispositive on this issue.
 
 B.
 
 13
 Polston argues that the district court erred in concluding that GMC was entitled to a directed verdict because Polston failed to prove the existence of enhanced injuries. We agree. When considering a motion for a directed verdict or a judgment notwithstanding the verdict we consider the evidence in the light most favorable to the party opposing the motion. Bauer Lamp Co. v. Shaffer, 941 F.2d 1165 (11th Cir.1991). The motion should be denied when there is substantial evidence on which reasonable persons could disagree. Picker Int'l, Inc. v. Parten, 935 F.2d 257 (11th Cir.1991) (quoting Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir.1969) (en banc )).
 
 
 14
 At trial, Polston relied primarily on the testimony of three expert witnesses to prove the existence and extent of her injuries and damages. The first two experts, Dr. Joseph Chandler, Polston's treating physician, and Dr. Harold Goldstein, an economist, testified to Polston's total injury, impairment and disability. They did not distinguish between injuries or damages caused by the initial collision and those caused by the fact that the vehicle was not crashworthy. However, Polston's third expert, Murray Burnstine, did testify to the existence of enhanced injuries.
 
 
 15
 Burnstine was a mechanical engineer with experience as an automobile accident investigator. He gained this experience while employed at Harvard Medical School in the department of legal medicine. During his employment with Harvard, Burnstine was one member of a five member team that investigated the scenes of fatal automobile accidents. (Supp.R. 3-22-23). As part of his duties, Burnstine consulted with automobile manufacturers concerning safety related problems he discovered in their cars. (Supp.R. 3-25). In addition, Burnstine gained experience in investigating accidents and determining, from the pattern of a person's injuries, what parts of the person's body contacted what part of the automobile. (Supp.R. 3-32-34). In other words, Burnstine was experienced in determining how certain injuries were caused in a collision and, more specifically, what injuries were caused by the vehicle's lack of crashworthiness. (Supp.R. 3-124).
 
 
 16
 At trial, Burnstine testified that in his opinion the Sunbird was dangerous in a front end collision because there was insufficient crush space and insufficient structure in the front of the car to protect the occupants from having the front of the car intrude into the occupants' space. (Supp.R. 3-123). He testified that some of Polston's lower extremity injuries were due to the Sunbird's lack of crush space and front end structure. (Supp.R. 3-123-124). After several objections by GMC as to Burnstine's qualifications to give an opinion regarding whether any of Polston's injuries were caused or contributed to by the Sunbird's lack of crashworthiness, Burnstine testified as follows:
 
 
 17
 Q: Mr. Burnstine, to a reasonable degree of engineering probability, in your opinion, did the lack of crashworthiness on the front end of this Pontiac 2000 and the crash pattern that you determined, did that lack of crashworthiness contribute or cause to contribute to the injuries, to the lower extremity injuries of Linda Polston, with the exception of the toes and any ankle injury there may be?
 
 
 18
 MR. ROSEN: Objection. Lack of qualifications and foundation.
 
 
 19
 THE COURT: You may answer.
 
 
 20
 A: Yes, sir, in my opinion it did.
 
 
 21
 Q: How?
 
 
 22
 A: Because--
 
 
 23
 Q: Or why?
 
 
 24
 A: First off, there was insufficient space ahead of Ms. Polston's lower extremities from the front bumper to where she was. That vehicle just doesn't have enough space and there is not enough structure there to absorb common, everyday accidents, so that when the front of the vehicle is involved, your lower extremities are going to get crushed in that vehicle.
 
 
 25
 (Supp.R. 4-137-138).
 
 
 26
 On redirect examination Burnstine testified:
 
 
 27
 Q: Now, directing your attention, we might as well stay with that volume, Page 188, sir, at the top of the page, the question is: You're not suggesting that the J car should have been stiffer? Could you read your answer, sir.
 
 
 28
 A: No, I'm not. I'm just saying that for foreseeable speeds and barrier crashes there should be enough crush space and substance there that you don't start crushing the people, and it didn't operate that way. Her lower extremities were trapped and crushed.
 
 
 29
 Q: So your concern is--
 
 
 30
 A: Answer: Those are all intrusion injuries. And I don't think that at 30 or 40 miles an hour you should get that type of foreshortening of the passenger compartment.
 
 
 31
 (Supp.R. 4-210-211).
 
 
 32
 Viewing the evidence in the light most favorable to Polston, we hold that Burnstine's testimony is sufficient evidence on the existence of enhanced injuries to withstand a motion for a directed verdict.
 
 C.
 
 33
 Finally, Polston contends that the district court erred in limiting the scope of Burnstine's testimony. Polston's attorney, Mr. Halstrom, attempted to elicit testimony from Burnstine concerning what injuries were caused by, or enhanced by, the alleged defective condition of the Sunbird. Burnstine was asked to base his conclusions on a reasonable degree of medical certainty. GMC objected. The district court sustained the objection based on Burnstine's lack of qualifications to testify about medical probability.
 
 
 34
 The trial court has broad discretion in the matter of admission or exclusion of expert evidence and his or her decision will be disturbed only if it is manifestly erroneous. Salem v. United States Lines Co., 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962); Perkins v. Volkswagen of America, Inc., 596 F.2d 681, 682 (5th Cir.1979). The court's decision to exclude Burnstine's testimony was not manifestly erroneous. Burnstine was a mechanical engineer with no medical training. Therefore, he was not qualified to testify to medical probabilities. However, as discussed above, Burnstine was qualified as an expert and was allowed to testify about Polston's injuries based on a reasonable degree of engineering certainty.
 
 
 35
 IV. The Parties' Contentions Regarding the Burden of Proof in a Crashworthiness Case
 
 
 36
 Having determined that Higginbotham is not dispositive of this case and that Polston introduced sufficient evidence concerning the existence of enhanced injuries to avoid a directed verdict on that issue, we now address the issue that will be certified to the Supreme Court of Georgia. This issue involves what burden of proof Georgia law places on each party in a crashworthiness or enhanced injury case. We hold that Polston introduced insufficient evidence of the extent of enhanced injury to withstand a motion for directed verdict. Thus, if she had the burden of proof on that issue, GMC was entitled to a directed verdict.
 
 A.
 
 37
 Polston contends that Banks and GMC are joint tortfeasors. Therefore, she argues, she need only show that the defect in the automobile was a substantial factor in causing her injuries. Polston relies on the line of cases represented by Mitchell v. Volkswagenwerk, A.G., 669 F.2d 1199 (8th Cir.1982). In Mitchell, the Eighth Circuit applied Minnesota law and held that once the plaintiff carries the burden of proving that the defective design of the car was a substantial factor in causing the enhanced injury, the burden of proof shifts to the tortfeasors to apportion the damages between them. Polston contends that under Georgia law, like Minnesota law, Banks and GMC are joint tortfeasors because there was concert of action between Banks and GMC and because her lower extremity injuries were indivisible injuries. See Gilson v. Mitchell, 131 Ga.App. 321, 205 S.E.2d 421 (1974), aff'd 233 Ga. 453, 211 S.E.2d 744 (1975).
 
 
 38
 Polston asserts that there was concert of action because the time between the initial collision and the second collision was so minute, there is no logical basis for separating the two. Further, she argues that the crushing injuries to her lower extremities are indivisible injuries caused by the negligence of Banks and the defective design of the GMC automobile.
 
 
 39
 Polston contends that forcing her to precisely apportion her injuries between those that actually occurred and those that would have occurred absent the defect requires her to try a hypothetical and speculative case. Further, requiring plaintiffs to prove the apportionment of injuries would be unduly burdensome because the experts needed to carry such a burden are not available to plaintiffs. Polston argues that requiring such proof from the plaintiff would contravene the purpose of strict liability law which was created in Georgia to allow plaintiffs to recover in cases where proving a case is often a difficult task.
 
 
 40
 Finally, Polston argues that if Mitchell is not followed and apportionment of damages is required in crashworthiness cases, the "middle of the line approach" as set out in Judge Rosenn's concurrence in Huddell v. Levin, 537 F.2d 726 (3rd Cir.1976), should be adopted. Under this approach, the striking driver and the manufacturer would not be joint tortfeasors and the plaintiff would have to prove that there was an alternative safer design; but the defendants would bear the burden of apportioning the plaintiff's damages. This solution is appropriate, Polston contends, because the manufacturer has greater resources and the skills necessary to carry the burden. Further, this "middle of the line approach" is more equitable than placing the burden of apportionment on the plaintiff because the injured plaintiff is assured recovery. On the other hand, Polston argues, if the plaintiff has the burden of apportionment and fails with respect to the manufacturer, then the driver is also absolved of liability because the plaintiff must necessarily fail in carrying his burden of proving the injuries caused by the driver.
 
 B.
 
 41
 GMC contends that by the very nature of a crashworthiness or enhanced injury case the manufacturer should be held liable only for the injuries over and above those that would have occurred in the absence of any defect. The plaintiff should bear the burden of apportioning her damages between the first and second collision because if she cannot prove specifically what injuries would have occurred in the absence of any defect, there is no way to determine that any enhancement occurred. For this proposition, GMC relies on the line of cases represented by Huddell v. Levin, 537 F.2d 726 (3rd Cir.1976).
 
 
 42
 GMC argues that Polston failed to carry her burden of proof because at trial she did not distinguish between the injuries caused by the first collision and the injuries caused by the alleged defect. This failure to apportion damages, GMC asserts, rendered Polston's case too speculative to present to the jury.
 
 C.
 
 43
 Both parties' positions are supported by substantial case law. Cases that place the burden of apportionment on the defendant include the following: Shipp v. General Motors Corp., 750 F.2d 418 (5th Cir.1985) (interpreting Texas law); McLeod v. American Motors Corp., 723 F.2d 830 (11th Cir.1984) (interpreting Florida law); Mitchell v. Volkswagenwerk, A.G., 669 F.2d 1199 (8th Cir.1982) (interpreting Minnesota law); Fox v. Ford Motor Co., 575 F.2d 774 (10th Cir.1978) (interpreting Wyoming law); General Motors Corp. v. Edwards, 482 So.2d 1176 (Ala.1985); Fouche v. Chrysler Motors Corp., 103 Idaho 249, 646 P.2d 1020 (Ct.App.1982); Lahocki v. Contee Sand & Gravel Co., 41 Md.App. 579, 398 A.2d 490 (Ct.Spec.App.1979).
 
 
 44
 Cases that place the burden of apportionment on the plaintiff include the following: Cleveland v. Piper Aircraft Corp., 890 F.2d 1540 (10th Cir.1989) (interpreting New Mexico law); Barris v. Bob's Drag Chutes & Safety Equip., Inc., 685 F.2d 94 (3rd Cir.1982) (interpreting Pennsylvania law); Caiazzo v. Volkswagenwerk, A.G., 647 F.2d 241 (2nd Cir.1981) (interpreting New York law); Stonehocker v. General Motors Corp., 587 F.2d 151 (4th Cir.1978) (interpreting South Carolina law); Huddell v. Levin, 537 F.2d 726 (3rd Cir.1976) (interpreting New Jersey law); Craigie v. General Motors Corp., 740 F.Supp. 353 (E.D.Pa.1990) (interpreting Pennsylvania law); Duran v. General Motors Corp., 101 N.M. 742, 688 P.2d 779 (1983).
 
 
 45
 As demonstrated by the above case law, the positions of both parties are supported by substantial case law from jurisdictions throughout the country. This split in authority emphasizes the need for certification. This question involves issues of public policy that are appropriately answered only by the Supreme Court of Georgia.
 
 
 46
 V. The Question to be Certified to the Supreme Court of Georgia
 
 
 47
 Under Georgia law, in a crashworthiness or enhanced injury case, does the plaintiff bear the burden of specifically apportioning damages between the striking driver and the manufacturer or does the burden of apportionment fall on the defendants? In other words, what is the burden of proof on each party in a crashworthiness or enhanced injury case under Georgia law?
 
 
 48
 Our statement of the question to be certified is not meant to limit the scope of inquiry by the Supreme Court of Georgia.
 
 
 49
 [T]he particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.
 
 
 50
 Martinez v. Rodriguez, 394 F.2d 156, 159 n. 6 (1968).
 
 
 51
 The entire record in this case, together with copies of the briefs of the parties, is transmitted herewith.
 
 
 52
 QUESTION CERTIFIED.
 
 
 
 [1]
 Polston sued Banks in simple negligence and subsequently settled that claim. The three GMC dealerships, Boomershine Pontiac-GMC Truck, Inc., Boomershine Chevrolet, Inc., and Boomershine Automobile Co. were dismissed leaving GMC as the sole defendant
 
 
 [2]
 To prove the existence of enhanced injury means the party with the burden of proof has introduced sufficient evidence so that the fact finder could find that the party suffered injuries that would not have occurred in the absence of any defective design
 To prove the extent of enhanced injuries means that the party with the burden of proof has introduced sufficient evidence so that the fact finder could determine what injuries are attributable to the second collision rather than the initial collision.
 As used in this opinion the term "second collision" refers to the collision between the occupant and the interior of the car.
 
 
 [3]
 Polston does not urge error in the district court's grant of a directed verdict with respect to the failure to warn claim
 
 
 [4]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc ), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981