USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1812

 ELIZABETH TRULL, NATHANIEL TRULL,
 BY HIS FATHER AND NEXT FRIEND DAVID TRULL,
 DAVID TRULL, INDIVIDUALLY AND AS ADMINISTRATOR OF
 THE ESTATE OF BENJAMIN TRULL,
 
 Plaintiffs, Appellants,
 
 v.
 
 VOLKSWAGEN OF AMERICA, INC., AND
 VOLKSWAGENWERK, A.G.,
 
 Defendants, Appellees.
 
 
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT
 
 FOR THE DISTRICT OF NEW HAMPSHIRE
 
 [Hon. Joseph A. DiClerico, Jr., U.S. District Judge]
 
 
 
 Before
 
 Selya, Circuit Judge,
 Coffin, Senior Circuit Judge,
 and Pollak, Senior District Judge.
 
 
 
 
 David P. Angueira with whom Edward M. Swartz, Alan L. Cantor,
and Lisa V. Kaprielian were on brief for appellants.
 Howard B. Myers with whom Bryan K. Gould was on brief for
appellees.

July 22, 1999

 COFFIN, Senior Circuit Judge. In February 1991, David
and Elizabeth Trull, and their two sons, Nathaniel and Benjamin,
were traveling to Maine after a day of cross-country skiing in New
Hampshire when their Volkswagen Vanagon slid on black ice and
collided with an oncoming car. Benjamin, age 9, died in the
accident, and Nathaniel, age 13, and Elizabeth suffered severe
brain injuries. In this diversity products liability action, the
Trulls seek damages from Volkswagen on the ground that defects in
the design of the Vanagon made their injuries more severe than they
otherwise would have been. The district court granted summary
judgment for Volkswagen on the Trulls' breach of warranty claims,
and a jury found for the automobile manufacturer on the remaining
liability claims.
 The Trulls contend that the district court made a number
of evidentiary errors that tainted the jury's deliberations and
also improperly imposed on plaintiffs the burden of proving the
nature and extent of the enhanced injuries attributable to the
Vanagon's design. We find no reversible error in the district
court's evidentiary rulings. The remaining matter of who, under
New Hampshire law, should bear the burden in a so-called
"crashworthiness" case, poses sophisticated questions of burden
allocation involving not only a choice of appropriate precedent but
also an important policy choice. It is a question of fairly recent
origin that has divided courts across the country. Although we do
not criticize the district court for abuse of discretion in its
decision declining to certify, we choose to exercise our own
discretion and think it preferable to allow the state's highest
court to choose its own path. We therefore grant the Trulls'
motion to certify the burden of proof question to the New Hampshire
Supreme Court.
 I. Background
 Although certain particulars of the Trulls' 1991 accident
are germane to issues raised on appeal, we think it more helpful to
relate them in the context of our discussions of those claims. At
this juncture, therefore, we provide only a brief procedural
history of the case.
 The Trulls filed their lawsuit in early 1994, alleging
claims of negligence, breach of warranty and strict liability on
behalf of all four family members. Plaintiffs had two primary
theories of recovery: (1) the Vanagon was defective because it was
a forward control vehicle constructed in such a way that it lacked
sufficient protection against a frontal impact, and (2) the Vanagon
was defective because the rear bench seats, on which Nathaniel and
Benjamin were seated, did not have shoulder safety belts as well as
lap belts.
 In May 1997, defendants filed an in limine motion seeking
to exclude from trial certain evidence relating to the post-
accident condition of the Vanagon because the vehicle had been
disposed of ("spoliated," in the relevant jargon) by the Trulls'
insurance company and therefore was unavailable to be inspected by
Volkswagen's experts. In particular, David Trull, who had gone
with a friend shortly after the accident to retrieve personal items
from the vehicle, was prepared to testify that Elizabeth's seat
belt was broken. Other evidence indicated that Benjamin had been
wearing a seat belt before the accident but was not wearing it when
he was found in the wreckage after the crash. Volkswagen claimed
that it would be unduly prejudicial to allow testimony about the
post-accident condition of the seat belts when the defendant had
had no opportunity to inspect them itself. The district court
granted the motion to the extent that plaintiffs were barred from
using lay testimony or expert opinion about the seat belts' post-
accident condition.
 In December 1997, the district court granted summary
judgment for the defendants on the breach of warranty claims, a
disposition that is not challenged on appeal. In April 1998, just
before opening statements in the trial, Elizabeth Trull withdrew
her remaining claims, assertedly because of the court's exclusion
of the seat-belt evidence and its determination that plaintiffs
bore the burden of proving the nature of any enhanced injuries
caused by a defect in the vehicle. Because Elizabeth was ejected
from the Vanagon, she maintained that evidence about her broken
seat belt was crucial for her to show a link between a defect and
her injuries. The defendants subsequently moved to dismiss the
claims of both Elizabeth and David Trull with prejudice, and the
district court granted the motion on May 4. The trial proceeded
with Nathaniel's and Benjamin's claims.
 The jury returned verdicts for the defendants on all
remaining claims, and the district court denied plaintiffs' motion
for a new trial. This appeal followed.
 II. Discussion
 Five of the plaintiffs' six assertions of error concern
the admission or exclusion of evidence, and the district court's
decisions in each instance are reversible only for an abuse of
discretion. See Acosta-Mestre v. Hilton Int'l of Puerto Rico, 156
F.3d 49, 56-57 (lst Cir. 1998). The last issue, the legal
determination of the appropriate burden of proof in New Hampshire
in a crashworthiness case, is a question of law entitled to de novo
scrutiny. We discuss first why we find no reversible error in the
court's evidentiary decisions, addressing each in turn, before
explaining why we choose to consult the New Hampshire Supreme Court
on the burden of proof issue.
 One procedural matter needs attention before we reach
these claims of error, however, and we therefore begin with that
issue, namely, whether Elizabeth has preserved her claims for
appellate review. A. Elizabeth's Appeal.
 Appellees contend that Elizabeth is not properly a party
on appeal because the district court dismissed her claims with
prejudice, and there has been no appeal of that dismissal. 
Appellants counter that their explicit statements withdrawing
Elizabeth's claims based on the court's pretrial rulings on the
burden of proof and the exclusion of the broken seat-belt
testimony, together with their offer of proof on those matters,
sufficed to preserve her right to appeal.
 Because the spoliation issue also is raised on behalf of
Benjamin's estate, and because we uphold the district court's
exclusion of the seat-belt evidence, Elizabeth's status is
irrelevant with respect to that claim. The court's ruling on the
burden of proof, however, which we hold in abeyance in order to
certify the issue to the New Hampshire Supreme Court, see infra at
22-31, is a different matter. If the state court disagrees with
the district court's resolution of that issue, Elizabeth would be
entitled to bring her claims in a new trial only if she has
preserved her appellate rights.
 After careful consideration of the record and relevant
legal principles, we conclude that she has not. As noted above,
Elizabeth withdrew her claims on the morning of the first day of
trial, April 7, 1998. Three weeks later, on April 30, as the
eighteen-day trial was near completion, defendants moved for
dismissal of Elizabeth and David's claims with prejudice. In an
eight-page memorandum in support of their motion, defendants argued
that dismissal with prejudice of Elizabeth and David's claims was
justified 
 given the procedural irregularity and timing
 of Mrs. Trull's "withdrawal," failure of David
 Trull to submit either claims or evidence, the
 extensive preparation that was undertaken by
 defendants to try Elizabeth and David Trull's
 claims, the amount of time the court has
 invested in ruling on evidentiary and other
 matters, the substantial rights defendants
 have developed under the rulings already made
 by the court, and the extreme cost to
 defendants and the court in holding a second
 trial in this matter.

Although the motion informed the court that plaintiffs objected, no
opposition was filed. The docket reports that on May 4, the court
orally granted defendants' motion. On May 6, in a document
entitled "JUDGMENT," the district court included its May 4 grant of
the dismissal motion in a list of five dispositions, which also
included the jury verdicts rendered on May 4. The same list was
repeated in a June 11 document entitled "POST-JUDGMENT JUDGMENT,"
which contained one additional item, the court's June 10 order
denying plaintiffs' motion for new trial. That motion did not seek
reversal of the dismissal.
 Plaintiffs' subsequent notice of appeal requested review
of six separate orders, but it, too, made no reference to the May
4 dismissal order. So far as we can tell, therefore, the record
contains neither an objection to the dismissal filed by the
plaintiffs nor a request that the court substitute a less final
disposition. Although counsel stated when he announced withdrawal
of Elizabeth's claims that he was making an offer of proof "for
purposes of appellate practice," we think this was not enough to
preserve her claims in the face of defendants' subsequent motion to
dismiss with prejudice. That motion explicitly alerted plaintiffs
to defendants' view that Elizabeth was not entitled to pursue an
appeal precisely because of the way in which she had withdrawn from
the trial.
 For whatever reason, plaintiffs repeatedly sidestepped
the dismissal issue. It was not raised in their renewed motion for
certification of the burden of proof question, their motion for new
trial, or their brief on appeal. Although ambiguous, each document
seems to presume that, if the court were to agree with plaintiffs'
arguments, Elizabeth's claims would be resurrected. See, e.g.,
Plaintiffs' Brief on Appeal at 16 (In argument challenging
exclusion of seat-belt evidence, plaintiffs asserted that "[t]he
Court committed reversible error when it prohibited Elizabeth Trull
from pursuing her claims."). Not until their reply brief, in
response to defendants' arguments that Elizabeth had waived her
appellate rights, did plaintiffs address the dismissal order, and
then referred to it only in passing. Their position apparently is
that, notwithstanding the dismissal, their offer of proof was
sufficient in the context of this case to preserve Elizabeth's
issues.
 We, however, can see no basis upon which to relax the
rule requiring parties to specifically designate the orders from
which they wish to take an appeal. See United States v. Velez
Carrero, 140 F.3d 327, 330 (lst Cir. 1998); Fed. R. App. Pro. 3(c). 
Plaintiffs could not have been oblivious to the district court's
dismissal of Elizabeth's claims the court documented its order
twice, once before and once after the new trial motion. The
request for dismissal, three weeks after the offer of proof, and
the court's subsequent grant of that motion, represented a new
stage in the proceedings on Elizabeth's claims. If plaintiffs
wished to preserve Elizabeth's claims without putting on what they
believed would be a meritless case in light of the court's rulings
on spoliation and burden of proof, they could have stipulated to
dismissal pending appeal or asked the court to change the dismissal
to one without prejudice. Instead, plaintiffs chose to sit idly
by as the district court disposed of her claims with finality. 
Plaintiffs' failure to appeal the decision taking Elizabeth out of
the case indeed, their failure to offer any substantive response
to defendants' request for dismissal is a procedural default that
bars further litigation of her claims.
 B. Exclusion of seat-belt evidence based on the
destruction of the Vanagon (spoliation).
 Appellants contend that the district court erred in
excluding evidence about the post-accident condition of Elizabeth's
and Benjamin's seat belts because appellants bore no responsibility
for the destruction of the Vanagon. They argue that such a serious
evidentiary sanction is reserved for instances of misconduct, in
which evidence is knowingly destroyed in the face of contemplated
litigation, and there is serious prejudice to the other party. The
short answer to this assertion is that our case law does not
require bad faith or comparable bad motive.
 [B]ad faith is not essential. If such
 evidence is mishandled through carelessness,
 and the other side is prejudiced, we think
 that the district court is entitled to
 consider imposing sanctions, including
 exclusion of the evidence. . . . Although
 deterrence may play a role, the primary aim is
 remedial, at least absent willful destruction.

Sacramona v. Bridgestone/Firestone, Inc., 106 F.3d 444, 447, 446
(lst Cir. 1997). Fairness to the opposing party therefore plays a
substantial role in determining the proper response to a spoliation
motion, and punishment for egregious conduct is not the sole
rationale for the most severe sanction of exclusion. 
 In its nineteen-page ruling on spoliation, the district
court thoughtfully examined various factors, including prejudice
and motive, in deciding whether and how to sanction plaintiffs for
the disposal of the Vanagon. Its analysis, which we do not recount
in detail, by no means reflects an abuse of discretion. The
district court found no suggestion of bad faith, but did opine that
"there are clear indications that the plaintiffs acted negligently
in allowing the destruction of the Vanagon." Order at 12. 
Presumably, the court was referring to the fact that David Trull
failed to prevent disposal of the car or to preserve evidence of
the seat-belt condition after he had examined the Vanagon while it
was in the insurance company's possession. Trull had inspected the
vehicle in an effort "to figure out what had happened," and the
thought "cross[ed] his mind" at the time that Volkswagen might be
at fault for something. Although Trull and his friend later
discussed returning to photograph the seat belts, they never did.
 In assessing prejudice, the court rejected the
plaintiffs' arguments that defendants were not unfairly
disadvantaged because plaintiffs' experts, too, were unable to
examine the car and because the defendants were able to mount a
sophisticated defense to the claims using other evidence. The
claim that the parties were equally disadvantaged by loss of the
vehicle ignores the very evidence that plaintiffs sought to
include. Had the district court allowed David Trull's lay
testimony concerning the condition of the seat belts, Volkswagen
would have had no basis for challenging his recollection or any
expert opinion derived from his testimony. And while Volkswagen
was able to vigorously defend without an expert evaluation of the
Vanagon, the court recognized that defendants would be
 forced to resort to a "battle of the experts"
 armed with a small amount of information of
 questionable reliability.

Order at 14. In this situation, the district court's judgment is
unassailable.

 C. Exclusion of evidence of the Eurovan
 The Trulls contend that the district court erred in
excluding evidence concerning the Eurovan, a Volkswagen vehicle
manufactured for sale in Europe before the time of the accident. 
The Trulls sought to show that the Eurovan had been designed to
solve the problems inherent in the Vanagon, thereby demonstrating
that Volkswagen was aware that the Vanagon was unreasonably
dangerous and that a feasible, affordable alternative was
available. The district court rejected the proffered evidence as
of doubtful relevance and because of "a danger of unfair
prejudice."
 The Eurovan's significance relates to the body design of
the two vehicles. The 1986 Vanagon owned by the Trulls was a so-
called "forward control vehicle," which had the engine in the rear
and consequently did not have the usual extended front end. The
lack of a front "crumple zone" to protect occupants from a front-
end collision was among the design defects that the Trulls alleged
contributed to their injuries. Volkswagen, however, countered that
the Vanagon's front structure was specially designed to absorb
collision forces and protect occupants.
 The Eurovan, which was introduced in the late 1980s, is
a front-engine vehicle and has a more traditional, longer front
end. In offering the Eurovan evidence, the plaintiffs sought to
show that it was, in essence, a "subsequent remedial measure" taken
by Volkswagen to fix the Vanagon's defective design. Although
evidence concerning subsequent remedial measures generally is not
admissible at trial, see Fed. R. Evid. 407, measures that take
place before the accident at issue do not fall within the
prohibition. See Bogosian v. Mercedes-Benz of North America, 104
F.3d 472, 481 (lst Cir. 1997); Raymond v. Raymond Corp., 938 F.2d
1518, 1523 (lst Cir. 1991). The district court does have its usual
discretion, however, to exclude the evidence under Fed. R. Evid.
403 if its probative value is substantially outweighed by the
danger of unfair prejudice. See Bogosian, 104 F.3d at 481;
Raymond, 938 F.2d at 1523-24.
 The district court ultimately rejected the Eurovan
evidence as unduly prejudicial in light of its doubtful probative
value, and we again cannot fault its reasoning. There was no
question that an alternative design was feasible, as it was
undisputed that Volkswagen knew that a more conventional, extended
front-end design was an available option at the time of the Trulls'
accident. Indeed, the jury heard ample evidence that other
manufacturers' vans had the front-end, or "snub-nose" design, and
plaintiffs elicited testimony from their expert indicating that
such vehicles were safer. Moreover, plaintiffs proffered no
evidence that Volkswagen specifically designed the Eurovan's front
end to remedy known safety problems in the Vanagon. In addition,
the proffered Eurovan evidence appears irrelevant to the remaining
claims in the case; the claims of the front-seat passengers, David
and Elizabeth, had been withdrawn, and the boys' claims centered on
the lack of shoulder belts, not on the lack of a front crumple
zone.
 In these circumstances, we doubt that admission of the
evidence would have been proper. Without question, it was not an
abuse of discretion to exclude it.
 D. Expert opinion based on Fatal Accident Reporting
System (FARS) data
 Plaintiffs claim the district court erred in allowing
defendants' experts to testify about an article entitled "Usage and
Effectiveness of Rear-Seat Belt Restraints in Severe Frontal
Crashes" because the article contained unreliable and irrelevant
data and constituted hearsay. We note, initially, that the court
did not allow the article itself into evidence, but simply
permitted defendants' experts two of the article's authors to
testify about its contents and the basis for their conclusion that
lap/shoulder belts are no more effective than lap belts alone in
preventing deaths. The study described in the article was based
on data compiled by the National Highway Traffic Safety
Administration (NHTSA) through the Fatal Accident Reporting System
(FARS), and the statistics cover every fatal frontal collision
reported for the period 1975 to 1995. The FARS system was
implemented by the federal government to collect data on fatal
accidents in the United States, and the information it contains is
drawn from police reports, motor vehicle registration files, vital 
statistics, and state highway department records. See Fatal
Accident Reporting System 1978 Annual Report Foreward (1978).
 We see no abuse of discretion in the district court's
decision to allow the experts' testimony. Under Fed. R. Evid.
803(8), data compilations of public agencies setting forth "matters
observed pursuant to duty imposed by law as to which matters there
was a duty to report" are not considered hearsay. Volkswagen
reports in its brief, and appellants do not contest, that the FARS
data on which the article was based are collected and reported
pursuant to a legislative mandate by the NHTSA, a public agency. 
See 49 U.S.C. 30168(a)(1)(A). Additionally, the evidence appears
to satisfy Fed. R. Evid. 703, which allows admission of expert
testimony based on "facts or data . . . of a type reasonably
relied upon by experts in the particular field." See International
Adhesive Coating Co. v. Bolton Emerson Int'l, 851 F.2d 540, 544-45
(lst Cir. 1988); see generally Seese v. Volkswagenwerk, A.G., 648
F.2d 833, 845-46 (3d Cir. 1981). Indeed, appellants' expert, John
Stilson, acknowledged that the FARS data are among the appropriate
sources to consult when evaluating the crashworthiness of a
vehicle. Consequently, the testimony was not excludible as
hearsay.
 Appellants' complaint that the study was irrelevant
because it included data gathered after the date of their accident
similarly misfires. A threshold question for the jury was whether
the Vanagon was defective because its rear seats were equipped only
with lap belts. Regardless of the state of knowledge at the time
Volkswagen designed and manufactured the Trulls' vehicle, the
company could be neither negligent nor strictly liable if more
comprehensive, up-to-date information demonstrated that a seat belt
system using only lap belts was reasonably safe. Although
statistics focusing solely on rear lap belts in forward control
vehicles would allow a more precise comparison, the unavailability
of such evidence does not render improper the evidence that was
available. The dissimilarities went to the weight of the evidence
and were a proper subject for cross-examination. See International
Adhesive Coating Co., 851 F.2d at 544. In sum, we find no
reversible error in the admission of this expert testimony.
 E. Evidence from prior lawsuit
 Plaintiffs contend that the district court erred in
allowing into evidence a diagram depicting the paths of the Vanagon
and the other car involved in the crash, an AMC Concord. The
Trulls had relied on the diagram, which showed the vehicles
colliding at a 90-degree angle, in an earlier state court lawsuit
they filed against the State of New Hampshire for failure to remedy
the icy road conditions. The Trulls had introduced the diagram as
an exhibit through the testimony of Sgt. Leon Shackley, the officer
in charge of the accident investigation for the Conway Police
Department.
 In the present lawsuit, the Trulls maintained that their
accident involved a nearly straight, head-on collision, while
Volkswagen attempted to show that the accident was a side impact,
with the front end of the Concord contacting the passenger side of
the Vanagon at an angle of about 55 degrees. The angle of impact
was significant in the Volkswagen case because the Trulls' claims
focused on the Vanagon's lack of a "front crumple zone" and the
absence of shoulder belts to prevent the boys from surging forward
in the back seat of the car.
 When Shackley was called as a witness by the Trulls in
this case, Volkswagen sought on cross-examination to show that the
Trulls had changed their position about the angle of the collision
and that -- the point of significance -- their original view
matched Volkswagen's. The Trulls objected on various grounds to
admission of the diagram, including that the document did not
qualify as a prior inconsistent statement and that its admission
would improperly bring evidence of another lawsuit into the case. 
The district court permitted Volkswagen to introduce the diagram
during cross-examination of Shackley, but barred Volkswagen from
identifying the defendant or referring to the claims at issue. The
exchange was brief, and went as follows:
 Q. Sergeant, in another lawsuit brought by the
 Trulls, you were called as a witness in the
 trial of that case; right?

 A. Yes.

 Q. Do you recall that in that case the Trulls,
 through their lawyer, introduced this diagram 
 . . . as a description of the paths of the
 vehicles in the accident?

 A. I don't specifically recall it. It was
 over a year ago or almost a year ago when that
 one went.

Volkswagen's attorney then showed Shackley the transcript from the
earlier proceeding.
 Q. Do you see the question from the Trulls'
 counsel to you?

 A. Yes.

 Q. And the question the sense of the
 question was whether that diagram was an
 accurate portrayal of how the vehicles
 traveled in this accident; correct?

 A. Yes.

 Q. And then the Trulls lawyer asked that that 
 be admitted as evidence; correct?

 A. Yes.

At that point, the district court gave the following limiting
instruction:
 Members of the jury, I'm going to instruct you
 at this time that the mere fact that another
 lawsuit may have been brought by the Trulls is
 not a matter which you should in any way
 consider in deciding this case. The mere fact
 of that lawsuit is not material and relevant
 to the decisions that you have to make in this
 case. However, to the extent that you find in
 any evidence presented to you any positions
 taken consistent or inconsistent with claims
 made in this case, then you may weigh and
 consider that evidence along with all the
 other evidence in this case. But the mere
 fact of that lawsuit is something that you
 should disregard in your deliberations.

 Subsequent to this testimony, Volkswagen sought to re-
call David Trull for questioning about the diagram and about a
related statement made by the Trulls' attorney in the earlier
trial. The statement was made during a bench conference, as that
attorney, Randall Cooper, advocated admission of a photograph of
the accident scene. He stated that the photograph "certainly
demonstrates that the reconstruction by the Police Department is
accurate in showing how the vehicle slid, and there was a side-to-
front impact." Before finally deciding whether to allow Trull to
be re-called, the district court conducted voir dire questioning of
Trull and Cooper. They both emphasized that the angle of the
accident was not at issue in the earlier trial and that the diagram
and statement by Cooper consequently were of little weight and
should not be deemed an inconsistent position.
 The district court declined to allow the questioning of
Trull. On appeal, plaintiffs repeat their objections to the
introduction of the diagram and assert that its admission
constituted prejudicial, reversible error.
 This issue strikes us as a classic example of the value
of leaving matters of evidence to the discretion of the district
court. Unquestionably, the Trulls in the earlier trial put forward
as accurate the diagram from which they now wish to distance
themselves, and it is a matter of record that their attorney
described the accident as a "side-to-front impact." With only
that much before us, we have simply a prior factual claim
contradictory to a factual position taken in this case by the same
party, and thus a presumptively admissible statement against
interest. See Kassel v. Gannett Co., 875 F.2d 935, 952-53 (lst
Cir. 1989); Estate of Spinosa v. International Harvester Co., 621
F.2d 1154, 1157 (lst Cir. 1980). With the limited scope of
questioning permitted by the court and the curative instruction, we
cannot say the district judge abused his discretion in admitting
the diagram during the Shackley cross-examination. Through their
own questioning, the Trulls had the opportunity to diminish the
force of the diagram by eliciting that it was not drawn with
technical precision and that Shackley no longer considered it to be
accurate.
 In addition, the court limited the impact of the diagram
by rejecting Volkswagen's request to question David Trull about it.
The court's decisions reflect the give-and-take of a trial, and the
careful consideration that a judge is obliged to give to the
parties' competing positions. Although the voir dire questioning
of Trull and his attorney, which occurred after admission of the
diagram, suggested that the inconsistency may have resulted more
from inattentiveness than deliberate strategy, this softer view of
the contradiction did not retroactively make erroneous or
prejudicial the diagram's admission. The district court
consistently dealt with this issue thoughtfully and with respect
for each party's position. We find no abuse of discretion.
 F. Exclusion of correspondence. Plaintiffs sought
admission into evidence of more than a dozen letters written
between Volkswagen and two government agencies, the National
Transportation Safety Board (NTSB) and the NHTSA. The
correspondence related primarily to Volkswagen's knowledge of the
added protective benefits provided to rear seat occupants by 
shoulder belts. We decline to dwell on this issue. The district
court allowed plaintiffs to introduce a sampling of the letters,
concluding that the remainder were cumulative and that their
admission and the resulting testimony would be unduly confusing for
the jury. Plaintiffs' brief fails to identify crucial, non-
cumulative information that was omitted as a result of the court's
selective admissions. We find no abuse of discretion.
 G. Certification of Burden of Proof
 The crashworthiness/enhanced injury theory of liability 
under which the Trulls brought their claims arises in automobile
accident cases when plaintiffs claim that a defect in their vehicle 
caused them to suffer greater injuries than would have occurred had
the vehicle been properly designed. See Larsen v. General Motors
Corp., 391 F.2d 495, 503 (8th Cir. 1968). In such cases, the
plaintiffs seek to recover damages from the car manufacturer for at
least a portion of their injuries.
 Whether the plaintiff or the defendant bears the burden
of segregating the injuries attributable to the vehicle's defect is
a question that has divided the courts that have considered it. 
See Polston v. Boomershine Pontiac-GMC Truck, Inc., 952 F.2d 1304,
1310 (llth Cir. 1992) (citing cases); McLeod v. American Motors
Corp., 723 F.2d 830, 833-34 (llth Cir. 1984) (same); Czarnecki v.
Volkswagen of America, 837 P.2d 1143, 1147-48 (Ariz. 1991) (same); 
see also Restatement (Third) of Torts: Products Liability 16, at
243-53 (1998); H. Vickles & E. Oldham, "Enhanced Injury Should Not
Equal Enhanced Liability," 36 S. Tex. L. Rev. 417, 426-38, 440
(1995); G. Tietz, M. Bushman & J. Podraza, Jr., "Crashworthiness
and Erie: Determining State Law Regarding the Burden of Proving and
Apportioning Damages," 62 Temp. L. Rev. 587, 595-611 (1989). Both
positions appear to have ample justification, and a given state's
stance is not easily predicted. The New Hampshire Supreme Court
has not yet faced the issue, and the Trulls therefore moved for
certification in the district court. That court declined to
certify, finding that New Hampshire law was adequately revealing
and that it required the burden to be placed on the plaintiffs. 
The Trulls have renewed their request for certification on appeal.
 We are not persuaded that New Hampshire's approach to
this issue can be discerned from review of the state's existing
tort law cases. Because of the sharp division in the courts that
have addressed the issue, and the policy concerns that underlay the
decision, we have chosen to consult the New Hampshire Supreme Court
through certification. See Kansallis Finance Ltd v. Fern, 40 F.3d
476, 481 (lst Cir. 1994) (absent controlling state law precedent,
federal appeals court sitting in diversity has discretion to
certify state law questions to highest state court); Polston, 952
F.2d at 1310 (certifying the same question to the Georgia Supreme
Court). Before framing our query, we summarize the competing
perspectives.
 The minority view, which is the one endorsed by
Volkswagen and used by the district court in this case, places the
burden on the plaintiff to prove the nature and extent of his
enhanced injuries. This so-called Huddell/Caiazzo approach,
derived from Huddell v. Levin, 537 F.2d 726, 737-38 (3d Cir. 1976)
(New Jersey law), and Caiazzo v. Volkswagenwerk, A.G., 647 F.2d
241, 250 (2d Cir. 1981) (New York law), requires a plaintiff to
prove three things: (1) that an alternative, safer design would
have been practicable under the circumstances; (2) the injuries, if
any, that would have resulted if the alternative design had been
used; (3) the extent of enhanced injuries attributable to the
defective design. See, e.g., Huddell, 537 F.2d at 737-38. The
latter two elements are, of course, corollaries, both in essence
requiring the plaintiff to sort out which injuries would not have
occurred, and which injuries (including additional ones) would have
occurred, had there been no defect.
 Volkswagen argues that this approach is conceptually
clear and consistent with basic tort principles. It asserts in its
brief that, "because in a crashworthiness case plaintiff's
essential claim is that the design defect caused the plaintiff to
suffer injuries he would not have received but for a defect in the
vehicle's design, the existence and extent of these more severe or
`enhanced' injuries are an essential element of the plaintiff's own
theory of recovery for which the plaintiff bears the burden of
proof." See Caiazzo, 647 F.2d at 251.
 The company further argues that this approach reflects
New Hampshire's approach to tort law, which is premised on "the
fundamental tenet . . . that the plaintiff retains the ultimate
burden of persuasion in negligence actions," Pillsbury-Flood v.
Portsmouth Hospital, 512 A.2d 1126, 1129 (N.H. 1986), and which, in
the context of a suit for aggravation of pre-existing injuries,
places the burden of proving the extent of aggravation on the
plaintiff, see Valliere v. Filfalt, 266 A.2d 843, 845 (N.H. 1970).
 The more widely used Fox-Mitchell approach, derived from
Fox v. Ford Motor Co., 575 F.2d 774, 787-88 (10th Cir. 1978)
(Wyoming law), and Mitchell v. Volkswagenwerk, A.G., 669 F.2d
1199, 1206-1208 (8th Cir. 1982) (Minnesota law), requires a
plaintiff to prove only that the design defect was a "substantial
factor in producing damages over and above those which were
probably caused as a result of the original impact or collision,"
see Mitchell, 669 F.2d at 1206. Once the plaintiff makes that
showing, the burden shifts to the defendant to show which injuries
were attributable to the initial collision and which to the defect. 
Under this line of cases, a manufacturer who fails to make such an
allocation is held liable for all of the plaintiff's injury. Thus,
in cases where the injury is "indivisible" such as, for example,
certain instances of paraplegia or death manufacturers are
treated as joint tortfeasors for all injuries. See id.
 The Mitchell and Fox courts also claim a traditional tort
law heritage for their approach. In explicitly rejecting the
Huddell-Caiazzo allocation of the burden, the court in Fox noted
"the orthodox doctrines of joint liability of concurrent tort-
feasors for injuries which flow from their concurring in one
impact," 575 F.2d at 787. Under this doctrine, the Mitchell court
pointed out, wrongdoers who each play a substantial role in
creating an indivisible harm are treated as joint and several
tortfeasors. See 669 F.2d at 1207. According to the Mitchell
court, use of the Huddell-Caiazzo model in enhanced injury cases
involving an indivisible injury departs from this well established
approach and "will generally result in complete exoneration of the
negligent manufacturer." Id. at 1207-08. The court observed:
 By placing the burden of proof on a
 plaintiff to prove that the designer was the
 sole cause of not only an enhanced indivisible
 injury, but, in addition, that he would not
 otherwise have received injuries absent a
 defect, the injured victim is relegated to an 
 almost hopeless state of never being able to
 succeed against a defective designer. The
 public interest is little served. . . . A rule
 of law which requires a plaintiff to prove
 what portion of indivisible harm was caused by
 each party and what might have happened in
 lieu of what did happen requires obvious
 speculation and proof of the impossible. This
 approach converts the common law rules
 governing principles of legal causation into a
 morass of confusion and uncertainty.

Id. at 1204-05.

 The Fox-Mitchell construct thus was designed to ensure
that plaintiffs whose injuries were in part traceable to a design
defect would be able to recover from the manufacturer, even when
they could not prove precisely how the defect made their injuries 
more severe. Using the joint tortfeasor setting as a model, this
approach "is a result of a choice made as to where a loss due to
failure of proof shall fall on an innocent plaintiff or on
defendants who are clearly proved to have been at fault," see
Mitchell, 669 F.2d at 1208 (quoting Mathews v. Mills, 178 N.W.2d
841, 845 (Minn. 1970)).
 Although Volkswagen emphasizes that the New Hampshire
Supreme Court explicitly has rejected burden-shifting for the
purpose of assisting plaintiffs, the primary case it cites
addresses a plaintiff's argument that the burden of negating
causation should have been shifted to the defendants. See
Pillsbury-Flood, 512 A.2d at 1128. The Fox-Mitchell approach does
not relieve a plaintiff of the threshold obligation of proving
causation, and thus liability; it is only after a plaintiff has
demonstrated that the design defect was a "substantial factor" in
producing damages over and above those that otherwise would have
occurred that the burden shifts to the defendant to apportion
damages. Indeed, in rejecting the burden-shifting proposed by the
plaintiff in Pillsbury-Flood, the New Hampshire court noted that
its rule 
 ensures that defendants will not have to
 defend against improbable claims, and that
 defendants will not have to disprove the
 element of causation. Proving a negative
 poses practical and theoretical problems that
 should not be placed on defendants.

512 A.2d at 1129-30. A very similar rationale motivated the
Mitchell court, which concluded that plaintiffs who have proven
causation should not be faced with the "impossible burden of
proving a negative fact," 669 F.2d at 1204-05. In our view, the
difference between shifting the initial burden of causation and
shifting the burden of allocating damages is sufficiently
significant that the result in Pillsbury-Flood does not necessarily
lead to the Huddell-Caiazzo approach.
 In sum, we think that the burden of proof that the New
Hampshire Supreme Court would choose for a crashworthiness case is
not readily apparent from existing case law and is quintessentially
a policy judgment appropriately made for the state by its own
courts. The applicable burden of proof unquestionably may have
been determinative of the jury's verdict. The court instructed the
jury that, to establish Volkswagen's liability, the plaintiffs had
to prove, along with causation, "the nature and extent of the
injuries that were enhanced." If the Fox-Mitchell approach were
the appropriate standard, the plaintiffs would have met their
burden to establish liability simply by showing that a defect in
the vehicle was a "substantial factor" in producing damages over
and above those that otherwise would have occurred. The burden of
apportioning damages would have fallen on Volkswagen. We therefore
certify to the New Hampshire Supreme Court, pursuant to its Rule
34, the question set forth in the attached certificate.
 III. Conclusion
 For these reasons, we affirm the various evidentiary
rulings by the district court and certify the question of the
appropriate burden of proof to the New Hampshire Supreme Court. We
retain jurisdiction pending that court's determination.

 CERTIFICATION
 For the reasons discussed in our opinion, the following
question is respectfully certified to the Supreme Court of New
Hampshire, pursuant to its Rule 34:
 Under New Hampshire law, in a crashworthiness
 or enhanced injury case, does the plaintiff
 bear the burden of demonstrating the specific
 nature and extent of the injuries attributable
 to the manufacturer, or does the burden of
 apportionment fall on the defendant once the
 plaintiff has proved causation?

In asking only this question, we do not intend to limit the scope
of the court's response. We welcome discussion of any relevant New
Hampshire law that the Supreme Court deems appropriate.
 The clerk of this court will transmit our certification,
along with copies of the briefs and the record appendix in this
case, to the New Hampshire Supreme Court. We shall await its reply
with interest and appreciation.
 It is so ordered.